1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Boulevard, 6th Floor
   Beverly Hills, California 90212
3  T: (310) 271.6223 |
   F: (310) 271.9805
4  E: Michael.Berger@bankruptcypower.com

5  *Proposed* Counsel for Debtor-in-Possession
   Mr. Tortilla, Inc.
6

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9              SAN FERNANDO VALLEY DIVISION

10

11  In re:                          )  CASE NO.:  1:24-bk-10228-VK
                                    )
12  Mr. Tortilla, Inc.,             )  Chapter 11
                                    )
13                                  )  **DEBTOR'S EMERGENCY MOTION
                   Debtor-in-Possession.  )  FOR ORDER AUTHORIZING
14                                  )  INTERIM USE OF CASH COLLATERAL
                                    )  PURSUANT TO 11 U.S.C. § 363;
15                                  )  MEMORANDUM OF POINTS AND
                                    )  AUTHORITIES; DECLARATION OF
16                                  )  ANTHONY ALCAZAR IN SUPPORT
                                    )  THEREOF**
17                                  )
                                    )  **[LBR 2081-1 and LBR 9075]**
18                                  )
                                    )
19                                  )  Date:  February 22, 2024
                                    )  Time:  2:00 p.m.
20                                  )  Place:  Courtroom 301
                                    )       21041 Burbank Blvd. Suite 354
21                                  )       Woodland Hills, CA 91367
                                    )
22                                  )
                                    )
23

24     **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES**

25  **BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE;**

26  **SECURED CREDITORS; TWENTY LARGEST UNSECURED CREDITORS,**

27  **AND PARTIES ENTITLED TO NOTICE:**

28

1

DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §
363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

# EMERGENCY MOTION

Pursuant to Section 363 of the Bankruptcy Code, Mr. Tortilla, Inc., the debtor and debtor in possession in the above-captioned case ("Debtor"), moves, on an emergency basis, for an order authorizing interim use of cash collateral of its secured creditors identified herein (collectively referred to as the "Secured Creditors") for the period of February 20, 2024, to March 31, 2024.

The Debtor commenced its Chapter 11 bankruptcy case on February 14, 2024 (the "Petition Date"). The Debtor has one prior chapter 11 bankruptcy case filed on August 14, 2018 in the Central District Bankruptcy Court, Case No.: 1:18-bk-12051-VK, in which case the Debtor was able to confirm a reorganization plan on April 14, 2020. In the prior bankruptcy, Debtor was discharged on June 26, 2020.

The Debtor specializes in preparing traditional flour tortillas that are low fat, low calorie, low sodium and are free of cholesterol and trans-fat; the tortillas are unique as they are flexible and do not break or stick. In addition to traditional flour tortillas, Debtor produces low-carbohydrate tortillas for low-carb and keto dieters.

In order to effectively reorganize, Debtor must be able to use the cash collateral of its Secured Creditors in order to pay the reasonable expenses it incurs during the ordinary course of its business. The Debtor requests authority from this Court to approve the emergency use of cash collateral to pay the ordinary and necessary expenses as set forth in the attached cash collateral budget, and incorporated herein as **Exhibit "1"** to continue its business without any interruption. Use of the cash collateral as proposed by the Debtor will allow the Debtor to continue doing business, and preserve the Debtor's assets for the benefit of the estate and the creditors, specifically the Secured Creditors. The Debtor has a reasonable prospect of reorganization through Chapter 11. The continued use of cash collateral to ensure no interruption of Debtor's business will further allow Debtor to emerge as a reorganized Debtor.

2

The relief sought in the Motion is based upon the Motion, the attached Memorandum of Points and Authorities, and declaration of Anthony Alcazar. The relief sought in the Motion is also based on the statements, arguments, and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**FOR THESE REASONS**, the Debtor respectfully requests that the Court enter an order:

1.   Granting the Motion;

2.   Authorizing the Debtor's emergency use of cash collateral for the period of February 20, 2024 to March 31, 2024, pursuant to 11 U.S.C. § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure;

3.   Setting a final hearing date on the Debtor's use of cash collateral; and

4.   Granting such other relief as the Court deems just and proper.

LAW OFFICES OF MICHAEL JAY BERGER

Dated:  2/20/2024          By:  _____
                                Michael Jay Berger
                                *Proposed* Counsel for Debtor-in-Possession
                                Mr. Tortilla, Inc.

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Debtor seeks this Court's authority for use of cash collateral of the Secured Creditors for the period of February 20, 2024, to March 31, 2024, in order to pay the necessary and ordinary expenses of the Debtor's business operations as described in full detail and attached to the Declaration of Anthony Alcazar as **Exhibit-1**.

### II.    JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this motion (the "Motion") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtor consents to the entry by the Court of a final order with respect to this Motion.

### III.    INTRODUCTORY STATEMENT

A. General Background

On February 14, 2024 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor operates its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in the Case.

The Debtor is a California corporation which is wholly owned by brothers Anthony and Ronald Alcazar. The Debtor owns and operates a tortilla manufacturing and food processing business located in San Fernando -- Mr. Tortilla -- which was started in 2012. Anthony owns 81% of the shares and is the President and CEO. Ronald owns 19% of the shares and is the CFO.

The Debtor specializes in preparing traditional flour tortillas that are low fat, low calorie, low sodium and are free of cholesterol and trans-fat; the tortillas are unique as they are flexible and do not break or stick. Popular flavors include: Gourmet White;

Whole Wheat; Honey Wheat; Tomato & Basil; Savory Spinach; Chipotle; Jalapeño. In addition to traditional flour tortillas, Debtor produces low-carbohydrate tortillas for low-carb and keto dieters.

The Alcazar Brothers decided to start Mr. Tortilla as one of their fondest childhood memories is that of their mother preparing flour tortillas on a flat griddle called a comal. The Debtor sells its tortillas to distributors and wrap manufacturers, and through online retailers such as Amazon.com and others. Debtor's product is the top selling tortilla on Amazon.com.

The events precipitating the Debtor's current Chapter 11 bankruptcy include Debtor's affiliated vendors, such as 8Fig, Inc., intercepting the Debtor's receivables.

B. Debtor's Need for the Use of Cash Collateral and Affected Parties

The Debtor has determined that absent the use of cash collateral, it will be unable to operate its business, irreparably harming the Debtor's estate and creditors. If the Debtor is unable to maintain its business and produce and supply tortillas for its customers, the Debtor will not be able to run its business, will lose existing employees, vendors, and customers, and will ultimately be forced to cease operations. This will cause harm to the Debtor. Furthermore, lack of use of cash collateral will harm the creditors of the estate because, if the business ceases its operation, no revenue will come in to support the plan payments. Therefore, Debtor's immediate access to cash collateral[1] is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest.

The Secured Creditors affected by Debtor's proposed use of cash collateral are as follows in the order of priority of UCC filings:

1. U.S. Small Business Administration, UCC no. 20-7779943462, filed May 20, 2020.

---

[1] Debtor will file a 6-month budget prior to the final hearing on the Debtor's use of cash collateral.

DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

2.  Amazon Capital Services, Inc., UCC no. U210083315624, filed September 8, 2021. Amazon has the priority claim against Debtor's cash collateral generated through Amazon's seller accounts, notwithstanding the seniority of the U.S. Small Business Administration's UCC filing.

3.  Corporation Service Company (as representative), UCC no. U220179776030, filed March 30, 2022

4.  Corporation Service Company (as representative), UCC no. U220213901220, filed July 27, 2022.

5.  Sand Park Capital LLC, UCC no. U220219238027, filed August 16, 2022.

6.  Fasanara Securitisation S.A., UCC no. U220228375230, filed September 20, 2022.

7.  8Fig, Inc., UCC no. U220251441725, filed December 14, 2022.

8.  Huntington Valley Bank, UCC no. U220255076422, filed December 28, 2022.

9.  First Corporate Solutions (as representative), UCC no. U230007398433, filed January 31, 2023.

10. Partners Personnel Management Services, LLC, UCC no. U230017096122, filed March 13, 2023.

11. Metropolitan Capital Bank & Trust, UCC no. U230024532824, filed April 7, 2023.

12. Stor RB One Limited, UCC no. U230077163329, filed October 27, 2023.

13. Parkside Funding Group LLC, UCC no. U230017096122, filed January 16, 2024.

14. CT Corporation Service Company (as representative), UCC no. U240005322926, filed January 23, 2024.

15. Cedar Advance, date unknown.

16. Shopify Capital, date unknown.

17. Sellers Funding, date unknown.

(Collectively the "Secured Creditors").

The Debtor seeks permission for the use cash collateral, in accordance with the six-week budget ("Budget") attached as **Exhibit-1**, to pay various necessary items in the ordinary course of business and as authorized by the Court, including payroll, insiders (subject to Notice of Setting Insider Compensation), raw materials, utilities, taxes, and other expenses necessary for the business operation.

Debtor does not have a current summary of its assets, however it will file a bankruptcy Schedule A/B summary of its assets by the time of the hearing on this Motion. The Debtor at this time is offering to make monthly adequate protection payments to the first position secured creditor, the U.S. Small Business Administration, in the amount of $1,237.00 per month, and adequate protection payments to Amazon in the amount of $5,000.00 per month. Debtor believes that all the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition.

Debtor's next payroll is due on February 23, 2024. Without immediate use of cash collateral, the Debtor will suffer immediate and irreparable harm and the entire bankruptcy proceeding will be jeopardized to the significant detriment of the Debtor's estate and its creditors. At a minimum, the Debtor's inability to use cash collateral would disrupt Debtor's operations as a going concern, would eliminate or significantly decrease the possibility of confirmation of a plan of reorganization, and would otherwise not be in the best interests of the Debtor, its estate, or creditors.

Access to existing cash collateral will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital to continue operating

its business and preserve and maintain the value of the Debtor's estate. Without access to such liquidity, the Debtor and its estate will face irreparable harm.

## IV.    THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL

### a.  <u>The Relief Requested Is Authorized by 11 U.S.C. § 363</u>

Section 363 of the Bankruptcy Code, made pertinent to this case by 11 U.S.C. § 1107, governs a debtor-in-possessions' use of property of an estate. Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section 721, ...of this title and unless the court orders otherwise, the [debtor-in- possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

Section 363(c)(2) stablishes a special requirement with respect to "cash collateral", by providing that a debtor-in-possession may not use, sell or lease "cash collateral" under subsection (c)(1) unless (i) such entity that has an interest in such collateral consents or (ii) the court, after notice and a hearing, authorizes such use, sale or lease.

> "Cash collateral" is defined by the Code as follows:
> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

The definition of "cash collateral" set forth in Section 363(a) refers to Section 552(b) of the Code, which provides:

8

Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

It is universally acknowledged that the debtor's cash "is the life blood of the business" and the bankruptcy court must ensure that such life's blood "is available for use even if to a limited extent." *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). Courts typically authorize a debtor-in-possession to use cash collateral to continue its business operations so long as the interests asserted by affected creditors in such cash are adequately protected.

As this Motion and the declaration in support of this Motion demonstrate, the standards for authorizing the Debtor to utilize cash collateral are satisfied in this case because the continuing operations will preserve the value of the Debtor's business as a going concern.

For the present, the Debtor is offering to make monthly adequate protection payments to the U.S. Small Business Administration in the amount of $1,237.00, and adequate protection payments to Amazon in the amount of $5,000.00 per month. Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and by granting a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition.

In the case at bar, the Court should allow the use of cash collateral because the interests of the Secured Creditors are adequately protected. Section 361 of the Bankruptcy Code provides a non-exclusive list of ways to provide adequate protection, including periodic cash payments, the grant of liens on new collateral, and replacement liens. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case-by- case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

The Debtor submits that the proposed adequate protection is appropriate and sufficient to protect the Secured Creditors from any diminution in value of their collateral until a later hearing by the Court. The cash collateral, based on a 6-week budget, will be used for funding necessary business operations. Access to this cash collateral will permit the Debtor to fund payroll, purchase raw materials, pay vendors, utilities, and otherwise continue business in the ordinary course. If Cash Collateral is not available, the Debtor's business will dissipate value to the detriment of the Secured Creditors and other stakeholders. Thus, the use of cash collateral will protect the Secured Creditors' security interests by preserving the value of the collateral. See *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). See also *Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

A debtor-in-possession's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C.

§ 361. Although the term "adequate protection" is not defined in the Bankruptcy Code,

Section 361 provides the following three non-exclusive examples of what may constitute

adequate protection:

> (1) requiring the [debtor-in-possession] to make a cash payment or periodic cash
>
> payments to such entity, to the extent that the …use…under section 363 of this
>
> title …results in a decrease in the value of such entity's interest in such property.
>
> (2) providing to such entity an additional or replacement lien to the extent that such
>
> …use …results in a decrease in the value of such entity's interest in such property;
>
> or
>
> (3) granting such other relief …as will result in the realization by such entity of the
>
> indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361

Neither Section 361 nor any other provision of the Code defines the nature and

extent of "interest in property" of which a secured creditor is entitled to adequate

protection under Section 363. However, the statute plainly provides that a qualifying

interest demands protection only to the extent that the use of the creditor's collateral will

result in a decrease in "the value of such entity's interest in such property". *United*

*Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.

Ct. 626, 98 L. Ed. 2d 740 (1988).

Timbers teaches that secured creditors are entitled to "adequate protection" only

against the diminution in their interest in asserted collateral by reason of the use of cash

collateral. Where the value of the Secured Creditors collateral is not diminishing by the

Debtor's use, sale, or lease, it follows that Lenders' interests in cash collateral is

adequately protected.[2] In *re McCombs Props. VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal.

---

[2] In *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bankr. D. Utah 1981), the court ruled that an equity cushion is not a requirement of adequate protection because a secured creditor is only entitled to protection against a decline in the value of its lien. The court reasoned that Section 361 speaks not in

1988), the court applied the foregoing straightforward interpretation of Timbers in ruling that a secured creditor's interest in the cash and proceeds derived from a debtor's operations was adequately protected where the value of the collateral was not declining during the pendency of the bankruptcy case. On the nature of the protection required, the court noted:

> The analysis of the Supreme Court in Timbers is instructive here. The phrase "interest in property" in § 363 means the value of the collateral. That is the interest that I am required to protect. If that value is likely to diminish during the time of the use, adequate protection must be provided by the debtor. As the Supreme Court stated in Timbers, thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d)(1) to cash payments or additional security in the amount of the decline, as § 361 describes.

Id., at 266 (quotations omitted).

Similarly, in *In re Forest Ridge, II, Ltd. Partnership*, 116 B.R. 937 (Bankr. W.D.N.C. 1990), the court ordered that no adequate protection payments were required, because the property in question was not decreasing in value. See also *In re Megan-Racine Assocs.*, Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) (stating that adequate protection is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of a debtor's reorganization); *In re Gallegos Research Corp.*, 193 B.R. 577 (Bankr. D. Colo. 1995).

Applying the foregoing authorities to the instant case, the Secured Creditors are entitled to protection only against the decline in value of their interests in the collateral which secures their claims. The Debtor's sales are projected to increase over the next several years and thus the continuing operation of the Debtor is adequate protection of the Secured Creditors.

---

terms of preserving equity, but in terms of compensating for any "decrease in the value of [an] interest in property". *Id.*, at 803. The Supreme Court's decision in *Timbers* confirms the interpretation of Section 361.

In light of the foregoing, the Debtor submits that the proposed adequate protection to be provided is appropriate and necessary to protect the Secured Creditors against any diminution in value and is also fair and appropriate under the circumstances of this case and to ensure that the Debtor is able to use cash collateral in the near term, for the benefit of all parties in interest and its estate. In order to avoid immediate and irreparable harm and prejudice to the Debtor, its estate, and all parties in interest, the Debtor requests that the Court authorize the Debtor to use cash collateral.

**b. <u>Emergency Authority To Use Cash Collateral Is Warranted Under 11 U.S.C. § 363(c)(3) And Rule 4001(B) To Allow The Debtor To Operate Its Business</u>**

The Debtor has requested an emergency hearing to consider the relief requested in this Motion. Section 363(c)(3) and Rule 4001(b)(2) require the Court to schedule a cash collateral hearing in accordance with the needs of the Debtor <u>and conduct a preliminary hearing for the purpose of authorizing the use of cash collateral to the extent necessary to avoid irreparable harm to the Debtor.</u> Section 363(c)(3) mandates that "[a]ny hearing [on the use of cash collateral] …shall be scheduled in accordance with the needs of the debtor". The Ninth Circuit has recognized that emergency relief is often crucial to the success of a corporate reorganization:

> "We realize that "in certain circumstances, the entire reorganization effort may be thwarted if emergency relief is withheld" and that reorganization under the Bankruptcy Code "is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations". It is for this very reason that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3)."

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) (citations omitted).

In the present case, emergency use of cash collateral by the Debtor, pending a final hearing, is necessary to prevent immediate and irreparable harm to the Debtor and its

creditors. Absent such use, the Debtor will have no funds from which to conduct its operations.

## V.    CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court grant the relief herein requested, authorizing limited interim use of cash collateral on the terms and conditions described in the Motion and the budget thereto and granting such other and further relief as is just and proper under the circumstances.

LAW OFFICES OF MICHAEL JAY BERGER

Dated: 2/20/24                    By:    _____
                                         Michael Jay Berger
                                         *Proposed* Counsel for Debtor-in-Possession
                                         Mr. Tortilla, Inc.

1

## DECLARATION OF ANTHONY ALCAZAR

2    I, Anthony Alcazar, declare and state as follows:

3        1.        I am the Chief Executive Officer of Mr. Tortilla, Inc. (the "Debtor") herein.

4    I have personal knowledge of the facts set forth below and if called to testify as to those

5    facts, I could and would competently do so.

6        2.        The Debtor is a California corporation which is wholly owned by myself

7    and my brother Ronald Alcazar. The Debtor owns and operates a tortilla manufacturing

8    and food processing business located in San Fernando -- Mr. Tortilla -- which was started

9    in 2012. I own 81% of the shares and I am the President and CEO. Ronald owns 19% of

10   the shares and is the CFO.

11       3.        The Debtor specializes in preparing traditional flour tortillas that are low

12   fat, low calorie, low sodium and are free of cholesterol and trans-fat; the tortillas are

13   unique as they are flexible and do not break or stick. Popular flavors include: Gourmet

14   White; Whole Wheat; Honey Wheat; Tomato & Basil; Savory Spinach; Chipotle;

15   Jalapeño. In addition to traditional flour tortillas, Debtor produces low-carbohydrate

16   tortillas for low-carb and keto dieters.

17       4.        My brother and I decided to start Mr. Tortilla as one of our fondest

18   childhood memories is that of our mother preparing flour tortillas on a flat griddle called

19   a comal. The Debtor sells its tortillas to distributors and wrap manufacturers, and through

20   online retailers such as Amazon.com and others. Debtor's product is the top selling

21   tortilla on Amazon.com.

22       5.        The events precipitating the Debtor's current Chapter 11 bankruptcy

23   include Debtor's affiliated vendors, such as 8Fig, Inc., intercepting the Debtor's

24   receivables.

25       6.        The Debtor has determined that absent the use of cash collateral, it will be

26   unable to operate its business, irreparably harming the Debtor's estate and creditors. If

27

28

the Debtor is unable to maintain its business and produce and supply tortillas for its customers, the Debtor will not be able to run its business, will lose existing employees, vendors, and customers, and will ultimately be forced to cease operations. This will cause harm to the Debtor. Furthermore, lack of use of cash collateral will harm the creditors of the estate because, if the business ceases its operation, no revenue will come in to support the plan payments. Therefore, Debtor's immediate access to cash collateral[3] is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest.

       7.    <u>The Secured Creditors effected by Debtor's proposed use of cash collateral are as follows in the order of priority of UCC filings</u>:

    a. U.S. Small Business Administration, UCC no. 20-7779943462, filed May 20, 2020.

    b. Amazon Capital Services, Inc., UCC no. U210083315624, filed September 8, 2021. Amazon has the priority claim against Debtor's cash collateral generated through Amazon's seller accounts, notwithstanding the seniority of the U.S. Small Business Administration's UCC filing.

    c. Corporation Service Company (as representative), UCC no. U220179776030, filed March 30, 2022

    d. Corporation Service Company (as representative), UCC no. U220213901220, filed July 27, 2022.

    e. Sand Park Capital LLC, UCC no. U220219238027, filed August 16, 2022.

    f. Fasanara Securitisation S.A., UCC no. U220228375230, filed September 20, 2022.

    g. 8Fig, Inc., UCC no. U220251441725, filed December 14, 2022.

---

[3] Debtor will file a 6-month budget prior to the final hearing on the Debtor's use of cash collateral.

DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

h.  Huntington Valley Bank, UCC no. U220255076422, filed December 28, 2022.

i.  First Corporate Solutions (as representative), UCC no. U230007398433, filed January 31, 2023.

j.  Partners Personnel Management Services, LLC, UCC no. U230017096122, filed March 13, 2023.

k.  Metropolitan Capital Bank & Trust, UCC no. U230024532824, filed April 7, 2023.

l.  Stor RB One Limited, UCC no. U230077163329, filed October 27, 2023.

m.  Parkside Funding Group LLC, UCC no. U230017096122, filed January 16, 2024.

n.  CT Corporation Service Company (as representative), UCC no. U240005322926, filed January 23, 2024.

o.  Cedar Advance, date unknown.

p.  Shopify Capital, date unknown.

q.  Sellers Funding, date unknown.

8.    The Debtor seeks permission for the use cash collateral, in accordance with the six-week budget ("Budget") attached as **Exhibit-1**, to pay various necessary items in the ordinary course of business and as authorized by the Court, including payroll, raw materials, utilities, taxes, and other expenses necessary for the business operation.

9.    Debtor does not have a current summary of its assets, however it will file a bankruptcy Schedule A/B summary of its assets by the time of the hearing on this Motion. The Debtor at this time is offering to make monthly adequate protection payments to the first position secured creditor, the U.S. Small Business Administration, in the amount of $1,237.00 per month, and adequate protection payments to Amazon in

1  the amount of $5,000.00 per month. Debtor believes that all the Secured Creditors are

2  adequately protected by the ongoing business operations and the income to be generated

3  throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement

4  lien to the extent of any diminution in value of collateral as a result of the Debtor's

5  continued use of cash collateral. The replacement lien would be on all post-petition

6  assets in the same priority and to the same extent and validity as the Secured Creditors

7  asserted pre-petition.

8      10.    Debtor's next payroll is due on February 23, 2024. Without immediate use

9  of cash collateral, the Debtor will suffer immediate and irreparable harm and the entire

10  bankruptcy proceeding will be jeopardized to the significant detriment of the Debtor's

11  estate and its creditors. At a minimum, the Debtor's inability to use cash collateral would

12  disrupt Debtor's operations as a going concern, would eliminate or significantly decrease

13  the possibility of confirmation of a plan of reorganization, and would otherwise not be in

14  the best interests of the Debtor, its estate, or creditors.

15

16      11.    Access to existing cash collateral will provide the Debtor with the liquidity

17  necessary to ensure that the Debtor has sufficient working capital to continue operating

18  its business and preserve and maintain the value of the Debtor's estate. Without access to

19  such liquidity, the Debtor and its estate will face irreparable harm.

20      I declare under penalty of perjury that the foregoing is true and correct and that

21  this declaration is executed on February 20, 2024 at San Fernando, California.

22

23

24                                  Anthony Alcazar

25

26

27

28

DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C §
363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

# EXHIBIT 1

# Projected 6 Weeks Income and Expenses - Mr. Tortilla, Inc.

| | February 16, 2024 - February 29, 2024 | Mar-24 | Comments |
|---|---|---|---|
| **Income** | | | |
| Amazon FBA Inventory Credit | $1,795.09 | $3,949.20 | |
| Amazon Gift wrap credits | $1.51 | $3.33 | |
| Amazon Promotional Rebate Refunds | $258.84 | $569.45 | |
| Amazon Sales - CAD | $38,368.21 | $84,410.06 | |
| Amazon Sales - DE | $0.00 | $0.00 | |
| Amazon Sales - UK | $5,133.19 | $11,293.01 | |
| Amazon Sales - US | $2,013.31 | $4,429.29 | |
| Amazon Sales - Vendor US | $134,673.14 | $296,280.90 | |
| Amazon Shipping Credits | $25.30 | $55.65 | |
| eBay Sales | $58.52 | $128.74 | |
| Other Sales | $33,728.66 | $74,203.05 | |
| Sales Tax | $409.53 | $900.97 | |
| Shopify Promotional Discounts | -$34,465.86 | -$75,824.89 | |
| Shopify Sales | $104,375.85 | $229,626.86 | |
| Shopify Shipping | $1,285.81 | $2,828.78 | |
| Walmart Sales | $4,097.55 | $9,014.62 | |
| | | | |
| **Gross Income** | **$291,758.65** | **$641,869.03** | |
| | | | |
| **Expenses** | | | |
| Amazon Adjustments | $155.37 | $310.74 | |
| Amazon Carrier shipping label adjustments | $153.86 | $307.71 | |
| Amazon Cost of Advertising | $11,143.98 | $22,287.96 | |
| Amazon FBA inventory and inbound services fees | $523.52 | $1,047.04 | |
| Amazon FBA product sale refunds | $289.40 | $578.80 | |
| Amazon FBA selling fees | $2,470.66 | $4,941.32 | |
| Amazon FBA transaction fees | $4,792.62 | $9,585.25 | |
| Amazon Promotional Rebates | $13,186.25 | $26,372.51 | |
| Amazon Refund administration fees | $50.38 | $100.77 | |
| Amazon Seller fulfilled selling fees | $3,274.92 | $6,549.84 | |
| Amazon Service fees | $1,635.76 | $3,271.52 | |
| Amazon Shipping credit refunds | $29.77 | $59.54 | |
| Amazon Shipping label purchases | $1,028.77 | $2,057.54 | |
| Amazon Vendor Base Co-Op | $17,776.85 | $35,553.71 | |
| Amazon Vendor Damage Allowance | $2,962.81 | $5,925.62 | |
| Amazon Vendor Marketing Expense | $6,076.17 | $12,152.34 | |
| Amazon Vendor Pick Up Allowance | $4,444.21 | $8,888.43 | |
| Raw Materials | $55,589.50 | $111,179.00 | |
| Payroll (Excluding Insider Compensation) | $93,500.00 | $161,000.00 | |

| | | | |
|---|---|---|---|
| **Insider Compensation - Anthony Alcazar** | $0.00 | $10,000.00 | |
| **Insider Compensation - Ronald Alcazar** | $0.00 | $8,800.00 | |
| **Insider Compensation - Anthony Alcazar, Sr.** | $0.00 | $8,000.00 | |
| Ebay Fees | $41.10 | $82.19 | |
| PayPal Fees | $5.44 | $10.88 | |
| Sales Tax Expense | $900.92 | $1,801.85 | |
| Shipping, Freight & Delivery | $33,271.50 | $66,543.01 | |
| Shopify Fees | $697.67 | $1,395.35 | |
| Shopify Refunds | $1,072.73 | $2,145.46 | |
| Walmart  Fulfillment Services | $586.38 | $1,172.77 | |
| Walmart Adjustments | $7.88 | $15.75 | |
| Walmart Commission | $408.08 | $816.16 | |
| Walmart Product Advertising | $0.00 | $0.00 | |
| Walmart Refunds | $37.12 | $74.23 | |
| Auto Expense | $214.48 | $428.95 | |
| Car Lease | $0.00 | $2,617.49 | This operating expense was paid for the month of February, prior to the petition date. |
| Total Auto Expense | $1,523.22 | $3,046.44 | |
| Facebook Advertising | $16,370.22 | $32,740.44 | |
| Interest Expense | $0.00 | $7,647.21 | This operating expense was paid for the month of February, prior to the petition date. |
| Licenses & Fees | $0.00 | $3,169.10 | This operating expense was paid for the month of February, prior to the petition date. |
| Marketing Expenses | $1,705.08 | $3,410.16 | |
| Moving & Storage | $146.05 | $292.11 | |
| Office Expenses | $4,141.00 | $8,282.00 | |
| Software Subscription License | $734.75 | $1,469.50 | |
| Travel | $533.32 | $1,066.64 | |
| Trade Shows | $0.00 | $0.00 | Debtor has no planned trade show attendance during the six-week time period. |
| Utilities | $2,554.15 | $5,108.31 | |
| **Adequate Protection Payments to U.S. Small Business Administration** | $1,237.00 | $1,237.00 | |
| **Adequate Protection Payments To Amazon Captial Services, Inc.** | $5,000.00 | $5,000.00 | |
| | | | |
| **Total Expenses** | **$290,272.90** | **$588,542.61** | |
| **Net Income** | **$1,485.75** | **$53,326.42** | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (specify): ***DEBTOR'S EMERGENCY MOTION FOR ORDER* AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363*; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 2/20/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Proposed Counsel: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Katherine Bunker    kate.bunker@usdoj.gov
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 2/20/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Victoria Kaufman
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367 United States Bankruptcy Court

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/20/2024 | *Yathida Nipha* | |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3. Served by Email:

U.S. Trustee:
Katherine Bunker
kate.bunker@usdoj.gov

SECURED CREDITORS:

8FIG Advance
Attn: Legal Dept.
legal@8fig.com

Amazon Capital Services:
Attn: Lauren Dorsett & Michael Gearin
laurendorsett@dwt.com
mike.gearin@klgates.com

Blue Bridge Financial
Attn: Legal Dept.
Legal@bluebridgefinancial.com

Bluevine
Attn: Officer
Support@bluevine.com

Cedar Advance
Attn: Simon Cedar
simon@cedaradvance.com

Corporation Service Company
SPRFiling@cscglobal.com

CT Corporation
uccfilingreturn@wolterskluwer.com

Fasanara Securitisation S.A. Acting
info@northdata.com

Financial Pacific Leasing
Attn: Allison Sweet
ASweet@FinPac.com

First Corporate Resolution
SPRS@FICOSO.COM

Huntington Valley Bank
Attn: Erin
erin@braavobank.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    F 9013-3.1.PROOF.SERVICE

Mercury Capital
info@mcadv.com

Metropolitan Capital Bank & Trust
Attn: Jeffrey Brown
rrabin@thompsoncoburn.com ; jbrown@thompsoncoburn.com

Parkside Funding Group LLC
Attn: Adriana Harris
Adriana@nomasrecovery.com

Partners Personnel Management Services, LLC
Attn: Cherly Canty
CCanty@espererholdings.com

Robert Reiser and Company
uccfilingreturn@wolterskluwer.com

Sand Park Capital
Attn: Simon Cedar
simon@cedaradvance.com

Sellers Funding
Attn: Officer
osaro@sellersfi.com

Shopify Capital
Legal@bluebridgefinancial.com

Slope Advance
Attn: Ashish Jain
ashish@slope.com

Spartan Capital
Attn: Jason Gang
jason@jasongang.com

Stor RB One Limited
uccfilingreturn@wolterskluwer.com

U.S. Business Administration
Attn: Elan Levey
elan.levey@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

## 20 LARGEST UNSECURED CREDITORS

Easy Post
Attn: Dustin Henrie
dhenrie@easypost.com

Facebook
Attn: Anthony Miller
Anthony.Miller@radiusgs.com

Fleetcor Technologies Inc.
Attn: Officer
PartnerServices@FleetCor.com

Greenberg Traurig
Attn: Reid Hockaday
hockadayr@gtlaw.com

IRS
Attn: Officer
Irs.gov.website.helpdesk@speedymail.com

Lyneer Staffying
Attn: Billing Dept.
billing@lyneer.com

Parker Group Inc.
Attn: Larry Nessenson, Esq.
lnessenson@jaffeandasher.com

Ramp
Attn: Officer
communications@ramp.com

Jeeves
Terry@tryjeeves.com

Southern California Edison
netbill@sce.com

UPS
Attn: Mary Kay
MaryKay.Pallas@iqor.com

We Pack it All
jesse.fonseca@wepackitall.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Rapid Fulfillment LLC
Attn: Adam Brumage
ABrumage@collectmoore.com

Frisbi
billing@frisbi.com

Taboola
Attn: Fred Sampliner
fsampliner@sampliner.com

MNTN
legal@mountain.com

Perpetua
billing@perpetua.io

Uline
accounts.receivable@uline.com

Bakers Authority
yoni@bakersauthority.com

Attentive Mobile
GMCCREADIE@nixonpeabody.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      F 9013-3.1.PROOF.SERVICE