1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6th Floor
   Beverly Hills, CA 90212-2929
3  Telephone:    (310) 271-6223
   Facsimile:    (310) 271-9805
4  E-mail:    michael.berger@bankruptcypower.com

5
   *Proposed* Counsel for Debtor and Debtor-in-Possession,
6  Mr. Tortilla, Inc.

7              UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                SAN FERNANDO VALLEY DIVISION

10
   In re:                          )    CASE NO.: 1:24-bk-10228-VK
11                                  )
                                    )    Chapter 11
12 Mr. Tortilla, Inc.,              )
                                    )    **DEBTOR'S MOTION FOR AN ORDER**
13                                  )    **AUTHORIZING DEBTOR TO SATISFY**
           Debtor and Debtor-in-Possession. )    **PRE-PETITION CLAIMS OF CRITICAL**
14                                  )    **VENDOR AMAZON.COM SERVICES,**
                                    )    **LLC NECESSARY FOR DEBTOR'S**
15                                  )    **CONTINUED BUSINESS OPERATION;**
                                    )    **DECLARATION OF ANTHONY**
16                                  )    **ALCAZAR IN SUPPORT THEREOF**
                                    )
17                                  )    **[LBR 9075-1(b)]**
                                    )    *Application Setting Hearing on Shortened*
18                                  )    *Notice is filed concurrently with this motion*
                                    )
19                                  )    Hearing Scheduled For:
                                    )    Date:    TBD
20                                  )    Time:    TBD
                                    )    Place:    TBD
21                                  )
                                    )
22                                  )
                                    )
23 ─────────────────────────────── )

24          TO THE HONORABLE VICTORIA S. KAUFMAN, JUDGE OF THE UNITED

25 STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA, THE

26 OFFICE OF THE UNITED STATES TRUSTEE, TO THE SECURED CREDITOR, TO

27                                   1

THE TWENTY LARGEST UNSECURED CREDITORS, AND TO ALL INTERESTED

PARTIES AND THEIR COUNSEL OF RECORD:

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

<strong>I.    <u>INTRODUCTION</u></strong>

Mr. Tortilla, Inc., the Debtor and Debtor in Possession herein ("<u>Debtor</u>"), in the above-captioned Chapter 11 case hereby moves this Court, on a shortened notice, for entry of an order authorizing it, but not requiring it, to satisfy Amazon.com Services, LLC's ("Amazon", or the "Critical Vendor") prepetition claims in order for the Debtor to be able to continue to transact business with Amazon without any interruption to its business.

The pre-petition claims of Amazon include:

(a)  Amazon's pre-petition incurred advertising, delivery, service charges, taxes, contract discounts, adjustments, and other amounts ("Amazon Vendor Fees") pursuant to Amazon Vendor Terms and Conditions ("<u>Vendor Contract</u>") not exceeding 19%.  These charges are ordinarily deducted in the ordinary course of business from invoice payments for the sale of the Debtor's inventory to Amazon.

(b)  Amazon's pre-petition incurred advertising, delivery, service charges, taxes, and other amounts ("Amazon Fees") pursuant to the governing Amazon Business Solutions Agreement (the "<u>BSA</u>") governing the seller account relationship between the Debtor and Amazon.  These charges are ordinarily deducted from proceeds of the sales of the Debtor's inventory in the ordinary course of business between the Debtor and Amazon.  Debtor has two separate accounts that are subject to the terms of the BSA:  the US Amazon account and the Canada Amazon account.  As of the petition date, the Debtor owes Amazon approximately $40,515.89 related to the US Amazon account.  As of the petition date, the Debtor's Canada Amazon account a balance due to the Debtor of approximately $48,221.40.  The US Amazon account and Canada Amazon account are separate from each other.  There will not be any deduction of fees owed on

2

the US Amazon account from the Canada Amazon account. Specifically, for the Canada Amazon account, Amazon will only deduct the Amazon Fees related to the Canada Amazon account. For the US Amazon account, Amazon will only deduct the Amazon Fees related to the US Amazon account plus an additional $1,000.00 every month to be applied toward the $40,515.89 pre-petition outstanding balance until paid in full. Amazon will not withhold any amount in addition to the monthly $1,000.00 from the US Amazon account to reducing the $40,515.89 pre-petition balance.

If the Debtor's ability to sell its products on Amazon and to transact business with Amazon is terminated or interrupted in any way, the Debtor's business will be paralyzed, which will cause great reduction in Debtor's revenue and hence, the inability of Debtor to propose a successful reorganization plan. The sales through Amazon's purchase orders and Amazon's online retail portals comprise roughly 62% of Debtor's total revenue. Amazon issues an order for Debtor's tortilla products every Sunday, which takes the Debtor approximately 5 days to fulfill. Without the continued revenue from Amazon, Debtor will not be able to afford the materials to fulfill the weekly Amazon orders, leading to negative reviews of Debtor's products and drastically reduced sales. This in turn would result in a huge loss of income for the Debtor, which Debtor needs in order to stay in business and generate income to fund its Plan of Reorganization.

The nature of Debtor's business operation is critically dependent on maintaining a good relationship with Amazon and is extremely time-sensitive. Debtor sells most of its tortilla products to Amazon. Amazon disburses funds to the Debtor on a bi-weekly basis. Due to the timing of the Debtor's bankruptcy filing, part of the Amazon Fees that Amazon normally automatically deducts from the funds before issuing payments to Debtor include charges that were incurred pre-petition. However, because of the pending bankruptcy, Amazon is not allowed to deduct and apply payments toward pre-petition incurred expenses. Absent this Court's order authorizing Amazon to deduct the Amazon Fees for the pre-petition period, it will

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR
AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF
ANTHONY ALCAZAR IN SUPPORT THEREOF

need to administratively freeze sufficient funds in the Seller Account and retain a reserve to preserve its recoupment rights on the vendor payables, causing cash flow problems for the Debtor. Thus, Debtor asks this Court to allow Amazon to deduct Amazon Fees certain of which have been incurred prepetition from the Seller Account proceeds and to deduct from invoice payments on the vendor payables, in order to allow the Debtor to continue to run its business without any hold on Debtor's Amazon accounts.

This Motion is based on the facts and law stated herein, the Declaration of Anthony Alcazar, all arguments and evidence that may be submitted at the hearing on the Motion, and such other papers and evidence of record as the Court may consider.

The statutory predicate for the relief requested in this Motion is Bankruptcy Code sections 105(a), 363(c), and 503(b)(9), Federal Rules of Bankruptcy Procedure 6003(b) and 6004(h), and Local Bankruptcy Rule 9014-5.

## II.  FACTUAL BANKGROUND

### A.    General Description of the Debtor

The Debtor commenced its Chapter 11 bankruptcy case on February 14, 2024 (the "Petition Date").  The Debtor has one prior chapter 11 bankruptcy case filed on August 14, 2018 in the Central District Bankruptcy Court, Case No.: 1:18-bk-12051-VK, in which case the Debtor was able to confirm a reorganization plan on April 14, 2020.

The Debtor is a California corporation which is wholly owned by brothers Anthony Alcazar and Ronald Alcazar. The Debtor owns and operates a tortilla manufacturing and food processing business located in San Fernando -- Mr. Tortilla -- which was started in 2012. Anthony owns 81% of the shares and is the President and CEO. Ronald owns 19% of the shares and is the CFO.

The Debtor specializes in preparing traditional flour tortillas that are low fat, low calorie, low sodium and are free of cholesterol and trans-fat; the tortillas are unique as they are flexible

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

1  and do not break or stick. In addition to traditional flour tortillas, Debtor produces low-

2  carbohydrate tortillas for low-carb and keto dieters.

3      The Alcazar Brothers decided to start Mr. Tortilla as one of their fondest childhood

4  memories is that of their mother preparing flour tortillas on a flat griddle called a comal. The

5  Debtor sells its tortillas to distributors and wrap manufacturers, and through online retailers such

6  as Amazon.com and others. Debtor's product is the top selling tortilla on Amazon.com.

7      **B.**    **Events Precipitating the Chapter 11 Bankruptcy Filing**

8      The events precipitating the Debtor's current Chapter 11 bankruptcy include Debtor's

9  affiliated vendors, such as 8Fig, Inc., intercepting the Debtor's receivables. These vendors

10  blocked the Debtor's Shopify and Amazon income, greatly reducing Debtor's revenues. The

11  Debtor filed the current Chapter 11 Bankruptcy to regain access to its receivables, and to

12  continue to operate and to pay its creditors.

13      **C.**    **Amazon Vendor Terms and Conditions ("Vendor Contract")**

14      Amazon.com Services, LLC on one hand, and the Debtor on the other, are parties to the

15  Vendor Terms and Conditions and related agreements, understandings, terms and conditions, and

16  purchase orders (collectively, the "Vendor Contract"). A true and correct copy of the Vendor

17  Contract is attached to the Declaration of Anthony Alcazar as **Exhibit-1**. The Vendor Contract

18  governs the terms under which Amazon purchases products directly from the Debtor. The

19  Vendor Contract permits, among other things, Amazon to cancel purchase orders, return product,

20  and deduct and net, from amounts owed to the Debtor various credits authorized thereunder. The

21  Vendor Contract provides that co-op, allowances, discounts, rebates, marketing, and other credits

22  are set forth in Amazon's program policies or in separate agreements, each of which is

23  incorporated into the Vendor Contract and each of which may be deducted from vendor

24  payables.

25      Pursuant to the terms of the Vendor Contract, prior to the filing of the present bankruptcy

26  case, Amazon was authorized to deduct from payments to the Debtor credits, fees, expenses, and

27

other charges from the Debtor's payments on invoices and remit, to the Debtor, the Debtor's net

invoice amounts.  There are certain outstanding pre-petition fees, expenses and other charges

incurred by Amazon which Amazon is not able to deduct absent further order from the

Bankruptcy Court, thus necessitating the filing of this motion.

       **D.**      **Amazon Business Solutions Agreement (the "BSA")**

The Debtor conducts its own sales through the Amazon.com online store (the "Amazon

Store"). Amazon and the Debtor are parties to the Business Solutions Agreement (the "BSA"),

which governs the Debtor's ability to sell products to customers on the Amazon Store. A true

and correct copy of the BSA is attached to the Declaration of Anthony Alcazar as **Exhibit-2**.

According to the terms of the BSA, the Debtor's sale proceeds are held in Amazon seller

accounts (a United States Seller Account and a Canada Seller Account, collectively the "Seller

Accounts"). Under the terms of the BSA, Amazon is authorized to net fees, expenses, and

reimbursements from the Debtor's sale proceeds and remit, to the Debtor's bank account, the

Debtor's net proceeds.  There are certain outstanding pre-petition fees, expenses and other

charges incurred by Amazon which Amazon is not able to deduct absent further order from the

Bankruptcy Court, thus necessitating the filing of this motion.

       **III.**      **NEED FOR RELIEF ON SHORTENED NOTICE**

The Debtor seeks the relief requested by the Motion on a shortened notice because it

needs to maintain the ongoing operation of the Amazon Store and maintain its vendor

relationship with Amazon to stay in operation.  The deduction of fees from the seller account and

from vendor payables is largely an automated process for Amazon and disruption of the

automated processes to require manual analysis and payment of prepetition payables will require

Amazon to temporarily administratively freeze Debtor's Seller account and establish reserves

until an order from the Bankruptcy Court authorizing Amazon to satisfy the pre-petition Amazon

Fees. The ability of the Debtor to timely fulfill and deliver its tortilla product to customers,

including Amazon, is crucial to the Debtor's continued business operations.  For that reason, the

1    Debtor seeks permission to allow Amazon to deduct in the ordinary course of business from the

2    gross proceeds for both the Amazon Seller Accounts and Amazon Vendor accounts the required

3    amounts pursuant to the Vendor Contract and BSA Agreement for the prepetition amounts owed

4    to ensure that Amazon will continue to conduct business with the Debtor and allow the timely

5    processing of payment for prepetition sales.  The relief in this motion will resolve concerns that

6    Amazon has due to the Debtor's bankruptcy filing and will allow the Debtor to maintain the

7    "business as usual" relationship with these parties and enable the Debtor to stay operational

8    during the bankruptcy case.

## IV. <u>ARGUMENT</u>

### A. <u>The Bankruptcy Code and Case Law Authorize Operating Debtor to Pay Pre-Petition Claims of Critical Vendor</u>

There are four primary and separate bases for approving payments to critical vendors to enable the survival of an operating chapter 11 debtor.

First, Federal Rule of Bankruptcy Procedure 6003(b) contemplates that bankruptcy courts may issue order authorizing debtors "to pay all or part of a claim that arose before the filing of the petition" if the relief is "necessary to avoid immediate and irreparable harm." Court have thus interpreted this rule as authorizing payments of pre-petition claims to critical vendors. *In re Humboldt Creamery, LLC*, 2009 Bankr. LEXIS 2477 at *3, n.2 (Bankr. N.D. Cal. Apr. 23, 2009) ("Nothing in the Bankruptcy Code forbids payment on a prepetition debt before confirmation of a plan, and Rule 6003(b) specifically contemplates such payments.").

Second, to the extent a claim is entitled to administrative priority, such a claim for the value of goods received by the Debtor within the 20-day period prior to the Petition Date which enjoys administrative priority under Bankruptcy Code section 503(b)(9), bankruptcy courts have the discretion to allow those payments to be made prior to plan confirmation. *See, In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) ("Courts have discretion to determine when an administrative expense will be paid.").

Third, Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Court have interpreted that statute to authorize the payment of prepetition claims to critical vendors. *See, e.g. In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 185 (Bankr. S.D.N.Y. 1989) (court authorized debtor to pay pre-petition wages under 363(b) when debtor "articulated sound business reasons" for doing do, showing that it was "critical for it to pay such pre-petition claims in order to preserve and protect its business and ultimately reorganize."). In addition to Section 363(b), some courts have also approved critical vendor payments under Section 363(c). *See, In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983)(court relied on section 363(c)(1) to authorize debtor-contractor to pay prepetition claims of suppliers who had potential lien claims in the ordinary course, since the filing of the lien claims threatened to stop work on debtor's project).

Fourth, Bankruptcy Code section 105 codifies the inherent equitable powers of the bankruptcy court, and empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts interpreting Section 105(a) have developed a "necessity of payment" rule which holds that bankruptcy courts have the ability to authorize the debtor's payment of prepetition obligations when necessary to the continued operation of the debtor's business. This rule was first announced by the United States Supreme Court in *Miltenberger v. Logansports, C & S.W.R. Co.*, 106 U.S. 286, 310-12 (1882) (holding that consistent with a receiver's duty to "protect and preserve the trust funds" in the receivership estate, "[m]any circumstances may exist which make it necessary and indispensable to the business... and the preservation of the property, for the receiver to pay pre-existing debts... out of the earnings of the [debtor]... under the orders of the court."). The doctrine was first applied in railroad reorganizations but later expanded to all manners of business reorganizations. *See, Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945)(Learned Hand, J.)(first expanding the doctrine beyond railroads to a hotel reorganization,

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR
AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION, DECLARATION OF
ANTHONY ALCAZAR IN SUPPORT THEREOF

the court stated "Let it [a hotel] once be shut down, and it will lose much of its value… Some priority [to the hotel's prepetition suppliers] may be essential to the [preservation] of the business."). *See and, In re Ionosphere Clubs, Inc.,* 98 B.R. at 176 (discussing the necessity of payment rule under section 105(a) as a separate basis from section 262(b) for approval of a payment of a prepetition creditor's claim). The necessity of payment rule is the strongest in the Third Circuit, but continues to be applied in other jurisdictions as well. *In re Lehigh & New England Railway Co.,* 657 F.2d 570, 281 (3d. Cir. 1981) ("[T]he necessity of payment doctrine… [permits] immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business under their pre-reorganization claims shall have been paid.") (quoting *In re Penn Central Transp. Co.*, 467 F.2d 100, 102, n.1 (3d Cir, 1972); *In re Just for Fee, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) (following doctrine); *In re Chateaugay Corp.,* 80 B.R. 279,287 (S.D.N.Y. 1987) (following doctrine).

In the Ninth Circuit, courts have approved critical vendor payments under Rule 6003(b) and under the theory that an administrative claim may be paid early. *See, In re Humboldt Creamery, LLC,* 2009 Bankr. LEXIS 2477 at *3-4 (Bankr. N.D. Cal. Apr. 23, 2009) (authorizing debtor, which operated a creamery, to pay pre-petition claims of milkmen that would be entitled to priority under Bankruptcy Code section 503(b)(9)). The *Humboldt Creamery* court reasoned that: "[n]othing in the Bankruptcy Code forbids payment on a prepetition debt before confirmation of a plan, and Rule 6003(b) specifically contemplates such payments. The court concludes that prepetition debt, and especially a priority debt, may be paid before confirmation if in the best interests of the estate." *Id.* *3, n.2. There have not been cases in the Ninth Circuit expressly deciding whether 363(b) is a sufficient, stand-alone justification for payment of the

9

pre-petition claim of a critical vendor. As to the necessity of payment rule, there have been

Ninth Circuit cases both approving and disapproving the doctrine. *Compare In re Adams Apple,*

*Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (Noting with approval that "[ c]ases have permitted

unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as ...

debts to providers of unique and irreplaceable supplies ... ") *with In re B&W Enterprises, Inc.*,

713 F.2d 534,537 (9th Cir. 1983) ("The Necessity of Payment Rule was created for and has been

applied only to railroad cases. Absent compelling reasons, we deem it unwise to tamper with the

statutory priority scheme devised by Congress in the 1978 Act.").

### B. **This Court Should Authorize, But Not Require, Amazon to Deduct Amazon Fees For Pre-Petition Period Under the Necessity of Payment Rule**

Payment is warranted for several reasons. First, if Amazon ceases to issue purchase

orders to the Debtor, the Debtor's business will be paralyzed. Sales through Amazon's online

retail portals comprise roughly 62% of Debtor's total revenue. Amazon issues an order for

Debtor's tortilla products every Sunday, which takes the Debtor approximately 5 days to fulfill.

Without the continued revenue from Amazon, Debtor will not be able to afford the materials to

fulfill the weekly Amazon orders, leading to negative reviews of Debtor's products and

drastically reduced sales. All of the aforementioned would result in a huge loss of income for the

Debtor, which Debtor needs to fund its Plan of Reorganization.

It is clear from the above that the ability to pay the prepetition Amazon Fees is needed "to

avoid immediate and irreparable harm." For similar reasons, to the extent the necessity of

payment rule applies in the Ninth Circuit, it would be satisfied because the services that Amazon

provide are "essential to the conduct of the business" of the Debtor. As such, payment of

prepetition Amazon Fees is in the best interest of the estate and all creditors.

The Debtor simply cannot afford any disruption in its ability fulfill Amazon's product

orders. The need to maintain the status quo with Amazon by paying pre-petition balances is thus

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR
AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF
ANTHONY ALCAZAR IN SUPPORT THEREOF

1    authorized under Rule 6003(b), since doing so would avoid irreparable harm that would result to

2    the Debtor's business.  To the extent the necessity of payment doctrine applies, it would support

3    paying the pre-petition claims of Amazon since the ability to fulfill orders and sell products

4    pursuant to the Critical Vendor's agreements is "essential" to the Debtor's business operations.

### IV.   CONCLUSION

6         Wherefore, for the reasons set forth above, this Motion should be granted, and the Court

7    should enter an order authorizing, but not directing, the Debtor to satisfy the prepetition claims

8    of Amazon by allowing Amazon to deduct such amounts from seller account proceeds or vendor

9    payables, and for any other relief deemed necessary and proper.

LAW OFFICES OF MICHAEL JAY BERGER

Dated:  3/1/2024                    By:  /s/ Michael Jay Berger
                                             Michael Jay Berger
                                             *Proposed* Counsel for Debtor
                                             Mr. Tortilla, Inc.

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR
AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF
ANTHONY ALCAZAR IN SUPPORT THEREOF

## DECLARATION OF ANTHONY ALCAZAR

I, Anthony Alcazar, declare and state as follows:

1.      I am the principal and the Chief Executive Officer of Mr. Tortilla, Inc., the debtor and debtor-in-possession in the above-captioned matter (the "Debtor").  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      I make this declaration in support of Debtor's Motion for Order Authorizing Debtor to Pay Pre-Petition Claims of Certain Critical Vendors Necessary for its Continued Operation (the "Motion").

3.      The Debtor commenced its Chapter 11 bankruptcy case on February 14, 2024 (the "Petition Date").  The Debtor has one prior chapter 11 bankruptcy case filed on August 14, 2018 in the Central District Bankruptcy Court, Case No.: 1:18-bk-12051-VK, in which case the Debtor was able to confirm a reorganization plan on April 14, 2020.

4.      The Debtor is a California corporation which is wholly owned by myself and my brother Ronald Alcazar. The Debtor owns and operates a tortilla manufacturing and food processing business located in San Fernando -- Mr. Tortilla -- which was started in 2012. I own 81% of the shares and is the President and CEO. Ronald owns 19% of the shares and is the CFO.

5.      The Debtor specializes in preparing traditional flour tortillas that are low fat, low calorie, low sodium and are free of cholesterol and trans-fat; the tortillas are unique as they are flexible and do not break or stick. In addition to traditional flour tortillas, Debtor produces low-carbohydrate tortillas for low-carb and keto dieters.

6.      My brother and I decided to start Mr. Tortilla as one of our fondest childhood memories is that of our mother preparing flour tortillas on a flat griddle called a comal. The Debtor sells its tortillas to distributors and wrap manufacturers, and through online retailers such as Amazon.com and others. Debtor's product is the top selling tortilla on Amazon.com.

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR
AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF
ANTHONY ALCAZAR IN SUPPORT THEREOF

7.       The events precipitating the Debtor's current Chapter 11 bankruptcy include Debtor's affiliated vendors, such as 8Fig, Inc., intercepting the Debtor's receivables. These vendors blocked the Debtor's Shopify and Amazon income, greatly reducing Debtor's revenues. The Debtor filed the current Chapter 11 Bankruptcy to regain access to its receivables, and to continue to operate and to pay its creditors.

8.       Amazon.com Services, LLC on one hand, and the Debtor on the other, are parties to the Vendor Terms and Conditions and related agreements, understandings, terms and conditions, and purchase orders (collectively, the "Vendor Contract"). A true and correct copy of the Vendor Contract is attached hereto as **Exhibit-1**. The Vendor Contract governs the terms under which Amazon purchases products directly from the Debtor. The Vendor Contract permits, among other things, Amazon to cancel purchase orders, return product, and deduct and net, from amounts owed to the Debtor various credits authorized thereunder. The Vendor Contract provides that co-op, allowances, discounts, rebates, marketing, and other credits are set forth in Amazon's program policies or in separate agreements, each of which is incorporated into the Vendor Contract and each of which may be deducted from vendor payables. Amazon's pre-petition incurred advertising, delivery, service charges, taxes, contract discounts, adjustments, and other amounts ("Amazon Vendor Fees") pursuant to Amazon Vendor Terms and Conditions ("Vendor Contract") not exceeding 19%. These charges are ordinarily deducted in the ordinary course of business from invoice payments for the sale of the Debtor's inventory to Amazon.

9.       Pursuant to the terms of the Vendor Contract, prior to the filing of the present bankruptcy case, Amazon was authorized to deduct from payments to the Debtor credits, fees, expenses, and other charges from the Debtor's payments on invoices and remit, to the Debtor, the Debtor's net invoice amounts.  There are certain outstanding pre-petition fees, expenses and other charges incurred by Amazon which Amazon is not able to deduct absent further order from the Bankruptcy Court.

10. The Debtor conducts its own sales through the Amazon.com online store (the "Amazon Store"). Amazon and the Debtor are parties to the Business Solutions Agreement (the "BSA"), which governs the Debtor's ability to sell products to customers on the Amazon Store. A true and correct copy of the BSA is attached hereto as **Exhibit-2.**

11. According to the terms of the BSA, the Debtor's sale proceeds are held in Amazon seller accounts (a United States Seller Account and a Canada Seller Account, collectively the "Seller Accounts"). Under the terms of the BSA, Amazon is authorized to net fees, expenses, and reimbursements from the Debtor's sale proceeds and remit, to the Debtor's bank account, the Debtor's net proceeds. There are certain outstanding pre-petition fees, expenses and other charges incurred by Amazon which Amazon is not able to deduct absent further order from the Bankruptcy Court.

12. Amazon's pre-petition incurred advertising, delivery, service charges, taxes, and other amounts ("Amazon Fees") pursuant to the BSA govern the seller account relationship between the Debtor and Amazon. These charges are ordinarily deducted from proceeds of the sales of the Debtor's inventory in the ordinary course of business between the Debtor and Amazon. Debtor has two separate accounts that are subject to the terms of the BSA: the US Amazon account and the Canada Amazon account. As of the petition date, the Debtor owes Amazon approximately $40,515.89 related to the US Amazon account. As of the petition date, the Debtor's Canada Amazon account a balance due to the Debtor of approximately $48,221.40. The US Amazon account and Canada Amazon account are separate from each other. There will not be any deduction of fees owed on the US Amazon account from the Canada Amazon account. Specifically, for the Canada Amazon account, Amazon will only deduct the Amazon Fees related to the Canada Amazon account. For the US Amazon account, Amazon will only deduct the Amazon Fees related to the US Amazon account plus an additional $1,000.00 every month to be applied toward the $40,515.89 pre-petition outstanding balance until paid in full.

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION; DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

Amazon will not withhold any amount in addition to the monthly $1,000.00 from the US Amazon account to reducing the $40,515.89 pre-petition balance.

13.    If the Debtor's ability to sell its products on Amazon and to transact business with Amazon is terminated or interrupted in any way, the Debtor's business will be paralyzed, which will cause great reduction in Debtor's revenue and hence, the inability of Debtor to propose a successful reorganization plan.  The sales through Amazon's purchase orders and Amazon's online retail portals comprise roughly 62% of Debtor's total revenue.  Amazon issues an order for Debtor's tortilla products every Sunday, which takes the Debtor approximately 5 days to fulfill.  Without the continued revenue from Amazon, Debtor will not be able to afford the materials to fulfill the weekly Amazon orders, leading to negative reviews of Debtor's products and drastically reduced sales.  This in turn would result in a huge loss of income for the Debtor, which Debtor needs in order to stay in business and generate income to fund its Plan of Reorganization.

14.    The nature of Debtor's business operation is critically dependent on maintaining a good relationship with Amazon and is extremely time-sensitive. Debtor sells most of its tortilla products to Amazon.  Amazon disburses funds to the Debtor on a bi-weekly basis.  Due to the timing of the Debtor's bankruptcy filing, part of the Amazon Fees that Amazon normally automatically deducts from the funds before issuing payments to Debtor include charges that were incurred pre-petition.  However, because of the pending bankruptcy, Amazon is not allowed to deduct and apply payments toward pre-petition incurred expenses.  Absent this Court's order authorizing Amazon to deduct the Amazon Fees for the pre-petition period, it will need to administratively freeze sufficient funds in the Seller Account and retain a reserve to preserve its recoupment rights on the vendor payables, causing cash flow problems for the Debtor.  Thus, Debtor asks this Court to allow Amazon to deduct Amazon Fees certain of which have been incurred prepetition from the Seller Account proceeds and to deduct from invoice

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CRITICAL VENDOR AMAZON.COM SERVICES, LLC NECESSARY FOR DEBTOR'S CONTINUED BUSINESS OPERATION, DECLARATION OF ANTHONY ALCAZAR IN SUPPORT THEREOF

payments on the vendor payables, in order to allow the Debtor to continue to run its business without any hold on Debtor's Amazon accounts.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on March 1, 2024 in San Fernando, California.

By: _____
Anthony Alcazar
Chief Executive Officer of Mr. Tortilla, Inc.

**EXHIBIT-1**

## VENDOR TERMS AND CONDITIONS

Welcome to Amazon's internal website for vendors, where you can obtain information to assist with managing your relationship with Amazon.com Services, Inc., and its affiliates (each and collectively, "Amazon", "we", "us" or "our"). Any person or entity ("Vendor", "you" or "your") who wants to supply Products (as defined in Section 1) to Amazon or access or use this website must accept these Vendor Terms and Conditions ("Agreement") without change. BY REGISTERING FOR OR OTHERWISE USING THIS WEBSITE, YOU (1) ON BEHALF OF YOURSELF AND THE ENTITY THAT YOU REPRESENT, AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING ALL TERMS AND CONDITIONS INCORPORATED BY REFERENCE; AND (2) REPRESENT AND WARRANT THAT YOU ARE EXPRESSLY AUTHORIZED TO BIND VENDOR TO THIS AGREEMENT.

**1. Purchase Orders and Pricing:** This Agreement governs our purchase of Products from you. "Products" means all goods provided to Amazon, including their packaging but excluding, if applicable, digital content that is intended for sale to customers and that is covered by separate agreements between you and us. We are not obligated to purchase Products, and you are not obligated to sell Products, until you accept a purchase order ("PO"). You will not substitute Products or combine or consolidate POs without our consent. Terms specified in PO confirmations or other communications sent by you to us are not binding unless agreed to in writing by both parties. Documents that we sign acknowledging receipt of Products do not constitute acceptance of the Products. We may modify or cancel POs without penalty before you deliver Products to the carrier. The PO provides Product prices and payment terms and may include discounts or rebates. Purchasing terms, coop, allowances, discounts, rebates or other funding, to the extent not reflected in the PO, will be set forth in Program Policies or separate agreements ("Additional Terms"), each of which is incorporated into this Agreement. Prices include any commissions and other charges, unless otherwise noted. You may request that certain Products be sold only to customers with Amazon Business accounts ("Business-Only Products"). You will identify to Amazon which Products are Business-Only Products and will be responsible for maintaining that list and ensuring its accuracy. Final determination about which Products constitute Business-Only Products, and any customer requirements that may apply to such products, will be made by Amazon.

**2. Product Images/Information:** On an ongoing basis, you will provide us, free of charge, all current Product information, including electronic images and any Product information or warnings required by law to be disclosed in any sale or advertisement of the Product ("Product Information"). Product Information also includes any Product information collected by us from your website, or otherwise made available to us by you (or by a third party at your direction). You grant us a non-exclusive, worldwide, perpetual, irrevocable and royalty-free license to: (a) use, copy, display, perform, and distribute the Product Information on or in connection with any online or offline point of presence, mobile application, service or feature; (b) excerpt, reformat, adapt or otherwise create derivative works of the Product Information; (c) use all trademarks or trade names included in the Product

Information; and (d) sublicense any of the foregoing rights to third parties in connection with our programs or services (for example, to advertise your Products). You will promptly provide all information regarding safety, compliance, industry standards or testing related to your Products ("Product Safety Information") that we reasonably request.

**3. Representations, Warranties, and Covenants:** You represent, warrant, and covenant on an ongoing basis that: (a) the Products are genuine and free from defects; (b) all materials and other items incorporated into the Products are new (not refurbished or reconditioned), unless you have received our prior written consent otherwise; (c) the Product Information, Product Safety Information, packaging, and labeling is true, accurate and complete; (d) the Products, Product Information, and our exercise of our license rights in this Agreement, will not violate any third party rights, including intellectual property rights; (e) you will comply with all applicable laws and rules relating to the Products (including obtaining and maintaining any permits or licenses required to manufacture, distribute, sell, export, import or otherwise deal in any Product), and the Products, Product Information, packaging, labeling, export, and import documentation (if applicable) will comply with all applicable laws and rules; (f) the Products may be lawfully marketed, stored, sold, distributed, and disposed of without restriction (e.g., no required disclosures, licenses, or registrations) other than any specific restrictions or prohibitions you disclose and we consent to in writing in advance of shipment to us, and you will notify Amazon in writing of all customer requirements that are required under applicable law for Business-Only Products identified by you; (g) no Product is, or contains ingredients that are, regulated as a controlled drug or substance, or is listed as a regulated chemical; (h) no Products will be provided to us that are regulated as a hazardous or dangerous product or material, except as expressly permitted under applicable Program Policies or you disclose to us and we consent to in writing in advance of shipment to us; and (i) the Products were produced, manufactured, assembled, and packaged in compliance with all applicable labor, wage, and hour laws and rules (including the U.S. Fair Labor Standards Act, if applicable), and no Products were produced, manufactured, assembled, or packaged by forced, prison or child labor (defined as age 15 or the minimum working age within the applicable jurisdiction, whichever is older); (j) the country of origin of the Products is not subject to U.S. or other applicable government sanctions that prohibit the importation of products from such country at the time of import or at the time you deliver the Products to us; (k) you and your financial institution(s) are not subject to sanctions or otherwise designated on any list of prohibited or restricted parties or owned or controlled by such a party.

**4. Product Returns; Effect of Remedies; Product Recalls and Safety Alerts:** We may return or dispose of at your expense, and you will accept and reimburse us for, any Product (a) that is defective, (b) that does not conform to agreed specifications or to samples, (c) that is subject to recall or safety alert by a government authority or the Product's manufacturer or distributor or that we otherwise reasonably determine poses a safety risk to customers, (d) that was not ordered in the applicable PO, (e) for which you fail to promptly provide Product Safety Information upon our reasonable request, or (f) that does not comply with

this Agreement. You will cooperate with the return or disposal of any Products under this Section. Title and risk of loss for all Products returned under this Agreement will pass to you upon delivery by us to the carrier. Except to the extent we otherwise agree in writing, we may also return to you or dispose of any Product that is damaged; you will accept any such return and reimburse us for the Product and any cost of return or disposal. Payment of an invoice does not limit our remedies. You will provide us with immediate written notice of any Product recall or safety alert. You are responsible for costs we incur in a recall or safety alert and for providing any required notices, information, and documents to applicable authorities or that are otherwise necessary for carrying out the recall or safety alert.

**5. Vendor Defense and Indemnification:** You will defend, indemnify, and hold harmless Amazon.com, Inc., its affiliated companies, and their respective officers, directors, employees, and agents (the "Amazon Parties") against any third party claim, liability, loss, damage, cost or expense (including reasonable legal fees) (each, a "Claim", and collectively, the "Claims") incurred by any Amazon Party arising from or relating to: (a) any death of or injury to any person, damage to any property or any other damage or loss related to any Product; (b) any Product recall or safety alert; (c) any infringement or misappropriation of any third party rights, including intellectual property rights, by any Product, Product Information, or other content you provide to us; (d) your negligence or intentional misconduct; (e) your breach of this Agreement; (f) any Product-related issue for which you or we are strictly liable; or (g) your failure to state accurate Product Information, or to promptly provide accurate Product Safety Information upon our reasonable request. However, with respect to the foregoing indemnity obligations, you will not be obligated to indemnify Amazon Parties to the proportional extent the liability for a Claim is caused by the negligence or intentional misconduct of that Amazon Party as determined by a final, non-appealable order of a court having jurisdiction. You will not consent to the entry of a judgment or settle any Claim without the Amazon Parties' prior written consent, which may not be unreasonably withheld. You will use counsel reasonably satisfactory to the Amazon Parties, and the Amazon Parties will cooperate in the defense at your expense. If any Amazon Party reasonably determines that any Claim might have an adverse effect, that Amazon Party may take control of the defense at its expense (without limiting your indemnification obligations). Your obligations under this Section 5 are independent of your other obligations under this Agreement.

**6. Limitation of Liability:** NEITHER PARTY IS LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS OR OTHER CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE, OR INDIRECT DAMAGES ARISING IN CONNECTION WITH THIS AGREEMENT, EXCEPT FOR THOSE ARISING IN CONNECTION WITH YOUR DEFENSE AND INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT.

**7. Shipping:** The parties will agree which party is responsible for managing and paying for transportation of Products to us. When we pay for transportation, you will deliver the Products to the Amazon-designated carrier and title and risk of loss for the Products will pass to us when you deliver the Products to the carrier (for

domestic shipments) or when the Products are cleared for export and delivered to the carrier at the port of export (for international shipments). When you pay for transportation, title and risk of loss for the Products will pass to us when we accept the Products. Except to the extent that we agree otherwise, you or your designated agent will be the importer or exporter of record, as applicable, on all cross-border transfers, returns, and other shipments of Products between you and us, will not list us as the importer or exporter on any import, export or other customs documentation, and will ensure that all cross-border transfers, Product returns and other shipments comply with all import, export, and other applicable laws and regulations. Under no circumstances will we be the exporter of record for cross-border shipments of Products from you to us. As the importer and exporter of record, you or your designated agent will be responsible for payment of any taxes, duties or fees, and will be responsible for all required recordkeeping, registration, reporting, and licensing. If we expressly agree to act as the importer or exporter of record, you will prepare and submit all documents required to export Products or to bring, distribute, and sell those Products in the destination country, you represent and warrant that all documents and the information contained in such documents are complete, accurate, and up to date, and you will pay any additional fees or charges due to insufficient or incorrect documentation. We will incur no liability arising from any assistance we provide in preparing any documentation or otherwise.

**8. Insurance; Guaranties; Proprietary Products; Consignment; Direct Fulfillment; Proposition 65:** You will comply with Schedule 1. If you at any time provide any Product to us that is described on Schedule 2, then you hereby also provide to us the guaranty applicable to that Product set forth in Schedule 2. If the parties agree that you will manufacture Products according to our designs or specifications, then you will comply with Schedule 3 for such Products. If the parties agree that you will provide Products for consignment to us, you will comply with Schedule 4 for such Products. If the parties determine that you will provide fulfillment services for certain Products, then you will comply with Schedule 5 for such Products. If you provide Products that require a warning under California Health & Safety Code Section 25249.6 (a "Proposition 65 Warning"), then you will comply with Schedule 7 for such Products.

**9. Confidential Information; Publicity:** You will, and will cause your affiliates and employees to, (a) protect and not disclose information that is identified as confidential or that reasonably should be considered confidential to us; (b) use this information only to fulfill your obligations under this Agreement; and (c) promptly return to us or destroy this information when this Agreement terminates. This Section 9 covers all confidential information regardless of when you receive it. You will not, without our prior written agreement, use any trademark, service mark, commercial symbol, or other proprietary right of Amazon, issue press releases or other publicity relating to Amazon or this Agreement, or refer to Amazon in promotional materials. If we authorize you to use any of our trademarks, you will comply with any Program Policies related to such use, including any trademark guidelines.

**10. Miscellaneous:**

**(a) Taxes:** You may charge and we will pay applicable federal, national, state or local sales or use taxes or value added taxes that you are legally obligated to charge ("Taxes"), subject to your provision to us of an invoice that states such Taxes separately and meets the requirements for a valid tax invoice. We may provide you with an exemption certificate or equivalent information acceptable to the relevant taxing authority, in which case you will not charge or collect the Taxes covered by such certificate. We may deduct or withhold any taxes that we may be legally obligated to deduct or withhold from any amounts payable to you under this Agreement, and payment to you as reduced by such amounts will constitute full payment and settlement to you of amounts payable under this Agreement. You will provide us with any forms, documents, or certifications required for us to satisfy any information reporting or withholding tax obligations with respect to any payments under this Agreement.

**(b) Choice of Law; Dispute Resolution:** This Agreement is governed by the U.S. Federal Arbitration Act, applicable U.S. federal law, and Washington state law, without reference to any applicable conflict of laws rules, the Convention on Contracts for the International Sale of Goods, or any local laws implementing the Convention on Contracts for the International Sale of Goods in any jurisdiction where the Products are sold. **Any dispute arising out of this Agreement will be resolved by binding arbitration, rather than in court.** There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. Arbitration conducted in person will be in King County, Washington or at another mutually agreed location; however, you may choose to have the arbitration conducted by telephone or based on written submissions. **You and we each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration you and we each waive any right to a jury trial. You and we also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

**(c) Other:** Either party may terminate this Agreement with 60 days' prior written notice. Regardless of any termination, you will fulfill all POs you accept before the effective date of termination. Section 2 (Product Images/Information), Section 3 (Representations, Warranties, and Covenants), Section 4 (Products Returns; Effect of Remedies; Product Recalls), Section 5 (Vendor Defense and Indemnification), Section 6 (Limitation of Liability); Section 8 (Insurance; Guarantees; Proprietary

Products; Consignment; Direct Fulfillment; Proposition 65); Section 9 (Confidential Information; Publicity); Section 10 (Miscellaneous); Schedule 1 (Insurance); Schedule 2 (Guaranty); Sections 3-6 and 8 of Schedule 3 (Proprietary Products); Sections 4 and 7 of Schedule 5 (Direct Fulfillment); and Schedule 7 (Proposition 65) will survive termination. Any Amazon affiliate may issue a PO under this Agreement, and POs are the separate obligation of the affiliate that issues the PO. With respect to such POs, such affiliate becomes a party to this Agreement and references to Amazon in this Agreement are deemed to be references to such affiliate. You will not assign this Agreement, or any obligation or right (including any right to payment) in the Agreement, without our prior written consent. Our estimates or forecasts are non-binding. We may either withhold and setoff, or demand payment of, any sums you owe us, including any Taxes that we are legally required to withhold from amounts we pay you. We may withhold payment if you have not sent us an appropriate invoice in accordance with the Program Policies. If you do not dispute the amounts we pay you (including amounts we withhold or setoff) within 90 days after such payment (or any shorter period specified in a Program Policy, Additional Terms, or PO), the payment amount will become final and you may not challenge or otherwise object to such payment amount. During the term of this Agreement and for 2 years after its termination, we may request and you will provide copies of your financial records reasonably necessary to verify any transactions related to this Agreement. If you do not respond within a reasonable period after receiving a records verification request, we may deduct any amount we reasonably believe to be due from amounts we pay to you. The parties' rights and remedies under this Agreement are cumulative. Either party's failure to enforce any provision will not be a waiver of the party's rights to subsequently enforce the provision. If any provision is held to be invalid, then that provision will be modified to the extent necessary to make it enforceable, and any invalidity will not affect the remaining provisions. This Agreement incorporates, and you will, and the Products you sell to us will, comply with, the terms, conditions, policies, guidelines, rules and other information ("Program Policies") on this website, and any other Additional Terms, including any updates to such Program Policies or Additional Terms from time to time. To the extent there is a conflict between this Agreement, the Program Policies, any Additional Terms or a PO, the conflict will be resolved by giving precedence in the order specified in such documents, or if not specified, the following order: this Agreement, the Program Policies, the applicable Additional Terms, and the applicable PO. You may use standard business forms or other communications (such as invoices, confirmations or shipping documents), but use of these forms is for convenience only and will not alter or supersede the provisions of this Agreement, any of our Program Policies, Additional Terms, or POs. Email we send to any email address you have on file with us or that you have otherwise designated will constitute notice from Amazon. This Agreement, including the Program Policies and any Additional Terms, is the entire agreement between Amazon and Vendor for the purchase and sale of Products, and supersedes all prior agreements and discussions. The parties expressly agree that this English language version of this Agreement (including all Program Policies, Additional Terms, and additional terms incorporated by reference or otherwise relating to this Agreement) is definitive and that in the event of any dispute or controversy as to the proper

interpretation and construction of this Agreement, the English version will prevail. Any versions provided in other languages are for reference purposes only.

**11. Revisions; Continued Use:** We reserve the right to change any of the terms of this Agreement, including the terms of any materials incorporated herein (unless otherwise specified by us in such materials), at any time and in our sole discretion. Any changes will be effective upon the earlier to occur of: (a) emailing the revised terms, or notice of such changes, to you at your e-mail address; or (b) posting the revised terms on this website. You are responsible for reviewing any revised terms, and any notices of revisions. YOUR CONTINUED ACCEPTANCE OF PURCHASE ORDERS OR CONTINUED USE OF THIS WEBSITE FOLLOWING OUR E-MAILING OR POSTING OF ANY REVISED TERMS, OR ANY NOTICE OF ANY SUCH REVISIONS, WILL CONSTITUTE YOUR ACCEPTANCE OF THE REVISIONS. IF YOU DO NOT AGREE TO ANY CHANGES TO THIS AGREEMENT OR THE PROGRAM POLICIES, YOU MUST STOP ACCEPTING PURCHASE ORDERS AND STOP USING THIS WEBSITE, AND GIVE US WRITTEN NOTICE.

## SCHEDULE 1

## INSURANCE

1.      If you provide to us any Product other than books, music, videos, DVDs, videogames or software, then you will obtain and maintain, at your expense, commercial general liability insurance coverage (which must include products liability coverage) of at least $1 million USD per occurrence. You must maintain your insurance coverage for 12 months after the expiration or termination of this Agreement.

However, if the Products include any Proprietary Products (as defined in Schedule 3), then the limits of your insurance coverage will be at least $20 million USD per occurrence and $20 million USD aggregate. If any Proprietary Products are intended for bodily consumption, then any fungi/mold or similar exclusion on the policy must contain the following or substantially similar language: "This exclusion does not apply to any fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption."

2.      Your required minimum limits of insurance may be satisfied by any combination of primary and excess/umbrella liability insurance policies. You will name "Amazon.com, Inc. and its affiliates and their respective officers, directors, employees, and agents" as additional insureds on each insurance policy required by this Schedule. Each of these policy coverages will be on a primary basis with any insurance maintained by us, and our insurance shall be excess of all insurance maintained by you. You will provide us with 30 days' advance notice of cancellation, significant modification or expiration of each policy.

3.      Upon request, you will provide a certificate of insurance and a copy of any applicable endorsement evidencing our additional insured status for each insurance policy required by this Schedule to Amazon's Risk Management via email at coi@amazon.com. Our approval of your insurance does not relieve you of any obligations, including but not limited to your defense and indemnity obligations, even for claims over your policy limits. If you fail to perform any of your obligations in this Schedule, we may withhold payments owed to you until you meet these obligations.

## SCHEDULE 2

## GUARANTY

This schedule sets forth continuing guaranties that you provide to us if you, at any time during the term of this Agreement, sell us the types of Products to which they apply.

<u>Schedule 2(a)</u>

If you provide any Product to us that is subject to the requirements of the U.S. Textile Fiber Products Identification Act, the U.S. Fur Products Labeling Act, or the U.S. Wool Products Labeling Act, then you provide to us the following continuing guaranty:

You guarantee that all textile fiber, fur or wool Products now being sold or which may hereafter be sold or delivered to us are not, and will not be misbranded nor falsely nor deceptively advertised or invoiced under the provisions of the U.S. Textile Fiber Products Identification Act, the U.S. Fur Products Labeling Act, the U.S. Wool Products Labeling Act, and the rules and regulations under any of these acts. You acknowledge that furnishing a false guaranty is an unlawful, unfair and deceptive act or practice pursuant to the U.S. Federal Trade Commission Act and certify that you will actively monitor and ensure compliance with the U.S. Textile Fiber Products Identification Act, the U.S. Fur Products Labeling Act, the U.S. Wool Products Labeling Act and the rules and regulations under any of these acts during the duration of this guaranty.

<u>Schedule 2(b)</u>

If you sell, have sold or otherwise provide any Product to us that is a "pesticide" or other product regulated under the U.S. Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") or its implementing regulations, then you provide to us the following continuing guaranty that (a) you are a resident of the United States and your current U.S. mailing address is as indicated in your vendor account information; and (b) the pesticides and other FIFRA regulated products comprising each sale, shipment or other delivery made previously or hereafter are: (i) lawfully registered with the U.S. Environmental Protection Agency at the time of sale, shipment or delivery, or fully qualified for a specific exemption from the FIFRA registration requirements at the time of sale, shipment or delivery, (ii) compliant with all requirements of FIFRA and its implementing regulations at the time of sale, shipment or delivery, and (iii) provided by you in the original, unbroken packaging.

<u>Schedule 2(c)</u>

If you provide any Product to us that is subject to the requirements of the U.S. Federal Food, Drug and Cosmetic Act, then you provide to us the following continuing guaranty:

All food, drug, medical device and cosmetic Products comprising each shipment or other delivery previously or hereafter made by or on behalf of you to or in the order

of us are hereby guaranteed, as of the date of such shipment or delivery, to be, on such date, not adulterated or misbranded within the meaning of the U.S. Federal Food, Drug, and Cosmetic Act ("FFDCA"), and not an article which may not, under the provisions of section 404, 505, or 512 of the FFDCA, be introduced into interstate commerce.

Schedule 2(d)

If you sell, have sold or otherwise provide any Product to us that is, or includes, a diamond, then you provide to us the following continuing guaranty:

You guarantee that (a) all diamonds now being sold or which may hereafter be sold or delivered to us have been handled in accordance with the provisions of the U.S. Clean Diamond Trade Act, the Kimberly Process Certification Scheme (as such term is defined in the U.S. Clean Diamond Trade Act), and all other applicable laws, rules and regulations, and (b) you will purchase diamonds only from importers who comply with the U.S. Clean Diamond Trade Act, the Kimberly Process Certification Scheme, and who have obtained a Kimberley Process Certificate (as such term is defined in the U.S. Clean Diamond Trade Act). Further, upon request, you will provide us with a copy of the Kimberly Process Certificate(s) for any of your importers.

Schedule 2(e)

If you sell, have sold or otherwise provide any Product to us that is a "covered good," as such term is defined in the U.S. Bank Secrecy Act or its implementing regulations, then you provide to us the following continuing guaranty:

You guarantee that you are either (a) a Dealer (as such term is defined in 31 C.F.R. 1027.100) and maintain a written anti-money laundering program that complies with 31 C.F.R. 1027.210, or (b) eligible for the retailer exemption from the definition of Dealer pursuant to 31 CFR 1027.100(b)(2)(i) and, therefore, you are not required to maintain an anti-money laundering program.

## SCHEDULE 3

## PROPRIETARY PRODUCTS

1.   **Proprietary Products:** If the parties agree that you will manufacture Products according to Specifications ("Proprietary Products"), then you and any subcontractors, affiliates, and delegates we approve under Section 7 of this Schedule ("Subcontractors") will comply with this Schedule; otherwise, this Schedule will not apply. "Specifications" means the specifications, designs (including Computer Assisted Designs ("CADs"), drawings, technical or "tech" packs, modifications or enhancements), and any related documentation to any of the above that we provide to you or is otherwise accepted by us in writing. You will manufacture Proprietary Products only at locations pre-approved by us in writing; however such pre-approval will not in any way limit any representation, warranty or covenant contained in this Schedule 3. You will not make any Material Modification to the Proprietary Products' materials, components, ingredients, formulas, formulations, manufacturing processes or manufacturing facilities unless you have submit the Material Modification to us and we approve the modifications in writing. "Material Modification" means any impact, effect or result that would alter the Specifications, ingredients, regulatory status, commercial sales, or labeling requirements of any Proprietary Product. You may not rely upon any instructions, directions, or documentation provided by a third party, unless we notify you in writing that the third party is authorized to provide such instructions, directions, or documentation.

2.   **Compliance:** Before starting full production, you will produce a quantity of finished Proprietary Products designated by us. When developing and manufacturing Proprietary Products, you will comply with the Amazon Supplier Code of Conduct and any Amazon social compliance, product quality, product safety, industry certification, labeling, trademark, packaging, shipping, and schedule requirements made available by us to you ("Compliance Requirements"). We will have the right, with or without notice, to review and inspect: (a) each of the Proprietary Products, at any stage of their development; (b) your and your Subcontractors' production and related facilities; and (c) any materials or documentation relating to, or incorporated in, the Proprietary Products. We or a third party selected by us will have the right, with or without notice, and at your expense, to review, inspect, and audit your and your Subcontractors' compliance with the Compliance Requirements. You will, and will cause your Subcontractors to, implement any corrective actions required by us in accordance with the timelines we specify.

3.   **Amazon Intellectual Property:** We reserve all rights in the information and materials, including Specifications, provided to you by us or our authorized third party. Except as expressly set forth in this Schedule, we do not grant to you any license, right, title or interest in, to, under or with respect to any trade secrets, designs, patents, trademarks, copyrights, inventions, data, trade dress, financial information, marketing plans, strategies, projections, or any intellectual property held by us ("Amazon Intellectual Property"). Upon our request, you

will provide us with all information and documentation that is known to you relating to Amazon Intellectual Property. You will assist us in any related proceeding or litigation, and will promptly execute and deliver to us or our legal representative any papers, affidavits and declarations and take such other action as we request to apply for, obtain, maintain, and enforce our rights in the Amazon Intellectual Property.

4.     **License:** If we direct you to use, mark or label Proprietary Products with a trade name, trademark, logo, service mark, trade dress or design ("Amazon Identification"), you will apply this marking or labeling, or use said trade dress, only on the quantity and in the manner specified. If we direct you to mark Proprietary Products with Amazon Identification, we grant you a non-exclusive, non-transferable, royalty-free, non-assignable and revocable right and license during the term of the Agreement to reproduce and display, without alteration of any kind, the Amazon Identification solely on the Proprietary Products and solely as directed by us. You may not transfer, assign or sublicense these rights or otherwise permit any other party other than a Subcontractor to use the Amazon Identification. You will not market, sell or dispose of Proprietary Products that include Amazon Identification (or Proprietary Product components that include Amazon Identification) to anyone other than us. If we do not accept delivery of Proprietary Products, you will not dispose of these Proprietary Products without removing labels, or markings and destroying Amazon Identification.

5.     **Work Product:** With the exception of products previously sold by you, any Proprietary Products or Amazon Identification made specifically for and/or at the request of us ("Work Product") will be deemed a "work made for hire" and made in the course of the performance of the terms of the Agreement and will belong exclusively to us. We own and retain all intellectual property rights in and to the Work Product and will have the right to apply for, register, obtain, and hold in its own name any and all intellectual property rights with respect to the Work Product. You will not create Work Product that infringes, misappropriates or otherwise violates any third party rights, including intellectual property rights. You represent, warrant, and covenant that you own all right, title and interest in and to any copyright, design, print, cut-out, lace, embellishment, appliqué, and/or fabric design (collectively, the "Print Design") not provided by us, that is incorporated in any Proprietary Product, and that the Print Design is not an unauthorized copy. If it is determined that you incorporated a Print Design in violation of the preceding sentence, you will immediately take steps to remedy the violation, including without limitation, providing additional assurances or alternative designs, or obtaining any necessary licenses or rights. We will have full and unlimited rights to make, have made, use, reproduce, sell, offer for sale, import, export, and distribute the Work Product without any claim or right thereto by you or your agents for additional compensation, and you will not make, use, reproduce, sell, offer for sale, import, export or distribute the Work Product for or on behalf of any other person or entity without the express written consent of Amazon. Without limiting our ownership rights outlined above in this paragraph, you hereby irrevocably assign to us, our successors and assigns all right, title, and interest in and to the Work Product, including intellectual property rights

embodied or incorporated in the Work Product or developed in the course of your production, creation or development of the Work Product, including without limitation all copyrights, trademarks, trade dress, service marks, patents, designs, Print Designs, recipes, formulas, formulations and trade secrets. You will execute all applications, assignments or other documents of any kind and take all other legally necessary steps under the law of any applicable jurisdiction or any international regime required for us to apply for, register, obtain, protect, perfect or enforce our rights, title, and interest in the Work Product. You appoint us as your attorney-in-fact to execute assignments of, and register all rights to, the Work Product and the proprietary rights in the Work Product.

6.    **Representations and Warranties**: You represent, warrant, and covenant that all Proprietary Products (a) will be manufactured by you in accordance with the Specifications and Compliance Requirements and (b) are of merchantable quality and good material and workmanship, are free of contamination, and are fit and sufficient for purposes for which goods of that type are ordinarily used. You also represent, warrant, and covenant that the design and/or manufacturing process for all Proprietary Products will not violate any third party rights, including intellectual property rights, where the Proprietary Products may be imported into and/or sold.

7.    **Subcontracting:** You will not subcontract or delegate any of your obligations under the Agreement, including this Schedule 3, to any third parties without our prior written consent. If we consent to the use of any Subcontractor, you will ensure that such Subcontractor is bound to the terms of the Agreement and provide a copy of any subcontract entered between you and such Subcontractor to us upon request. Each subcontract will name us as a third party beneficiary of the subcontract. Notwithstanding our consent or the existence or terms of any subcontract, you are responsible for the full performance of your obligations under the Agreement and for your Subcontractors' compliance with the terms of the Agreement.

8.    **Raw Materials:** We may, from time to time, at our expense, furnish raw materials or packaging materials (collectively, "Raw Materials") to you required for the manufacture, production, processing, and/or packaging of Proprietary Products. You agree that you will only use Raw Materials in Proprietary Products at our direction, and not for any other products. You agree to inspect all Raw Materials to ensure they meet the Specifications before using the Raw Materials in the manufacture, production, processing, and/or packaging of Proprietary Products. You will: (a) store all Raw Materials at your facility, free of charge and pursuant to the requirements provided by us from time to time; (b) clearly and conspicuously label the Raw Materials as our property; (c) segregate all Raw Materials from other goods; (d) take reasonable measures to secure and protect the Raw Materials from loss or damage; and (e) keep all Raw Materials free and clear of any liens, claims, security interests, and other encumbrances. We will retain title to the Raw Materials until you deliver the Proprietary Products containing the Raw Materials to us. You will bear the risk of loss of the Raw

Materials from the time of delivery to you until delivery of the Proprietary Products containing the Raw Materials to us. Upon termination or expiration of the Agreement, all Raw Materials in your possession at such time will, at our option, either be (i) returned to us promptly, at our cost, (ii) destroyed, or (iii) purchased by you at a reasonable price to be determined in accordance with then-current industry costs, as agreed by both parties.

# SCHEDULE 4

# CONSIGNMENT

1.      If the parties agree that you will provide Products for consignment to us, you will comply with this Schedule; otherwise, this Schedule will not apply. We may request consignment Products with a PO. Unless otherwise agreed by the parties, the price on the consignment PO will be the price charged by you and paid by us following our purchase, if any, of the consignment Products from you and our sale of consignment Products to our customers. All terms of the Agreement apply to consignment Products, except to the extent otherwise provided in this Schedule.

2.      Title to each unit of Product transfers to us at the time we purchase it from you. We will pay you the amount properly payable at the end of each month for consignment Products sold in the previous month. Risk of loss for consignment Products will transfer to us only after we accept the Products.

3.      We will accept consignment Products only at the facility designated in the applicable PO. We will store accepted consignment Products until (a) we purchase such consignment Product from you, (b) we return the consignment Product, or (c) the Agreement is terminated for any reason. We may store consignment Products in any facility we choose. If there is loss of or damage to any consignment Product while stored by us, our liability is limited to the price that we agreed to pay you for the consignment Product in Section 1 of this Schedule.

4.      You will pay all personal property taxes assessed on consignment Products, including taxes assessed during the period we hold the Products. You has no security interest, lien or other claim in or to the proceeds that we receive from our sale of consignment Products. If an Amazon customer returns consignment Product, we may retain title to such returned Product or return such Product to you. All Products ordered on a consignment basis will constitute true consignments of the consignment Products and not the purchase and sale of merchandise by Amazon.

## SCHEDULE 5

### DIRECT FULFILLMENT

1.      If the parties determine that you will provide packing and shipping fulfillment services, as described in this Schedule ("Direct Fulfillment Services"), then you will comply with this Schedule; otherwise, this Schedule will not apply.

2.      This Schedule will only apply to purchases of Products that we designate for Direct Fulfillment Services ("Direct Fulfillment Products"), and as applied to purchases of Direct Fulfillment Products and the performance of Direct Fulfillment Services the provisions of this Schedule will control over any inconsistent provision of this Agreement.

3.      Direct Fulfillment Services: We will have the right to fulfill any of our customer orders for Products by issuing a PO to you designated for Direct Fulfillment Services (a "Direct Fulfillment PO") and utilizing the Direct Fulfillment Services for such Direct Fulfillment Products. Any of our affiliates will have the right to issue a Direct Fulfillment PO under this Agreement, and Direct Fulfillment POs are the separate obligation of the affiliate that issues the Direct Fulfillment PO.

4.      Amazon Customers: Our customers are not, by virtue of this Schedule or the rest of this Agreement, your customers. You will not handle or address any contacts with any of our customers, and, if contacted by any of our customers, you will state that those customers must follow contact directions on the web site on which the purchase was made to address customer service issues; provided that this Section 4 will not restrict you with respect to people or entities who are our customers but contact you for matters unrelated to us, the Direct Fulfillment Products or the Direct Fulfillment Services, or with respect to distributing and processing product warranty cards.

5.      Compensation: Your compensation for the purchase of the Direct Fulfillment Products and for the performance of the Direct Fulfillment Services (including without limitation all labor, materials, costs, and expenses of the Direct Fulfillment Services) is included in the price invoiced for the related Product(s), and (except as set forth in any applicable Direct Fulfillment Program Policies, as defined below, with respect to reimbursement for shipments on your carrier accounts) you will not be entitled to, and we will not pay, any other fees, costs, accessorials, additionals, expenses, charges, surcharges, taxes, tariffs or other compensation or reimbursement in connection with the Direct Fulfillment Services.

6.      Warranties: You represent, warrant, and covenant that you will comply with all laws, regulations and rules relating to the Direct Fulfillment Services. We may from time to time give volume and other projections to you, but such projections are speculative only and will not give rise to liability for us. We do not make any representation, warranty, or promise as to the amount of business or Direct Fulfillment POs you can expect at any time under this Schedule or this Agreement, and we will not be liable for any actions you undertake based on your expectations.

7.      Tax Matters: We will provide you with a resale exemption certificate, either with respect to the Multi-State Tax Commission or to any other jurisdiction we deem appropriate in our sole discretion, with respect to any purchases of Direct Fulfillment Products. You accept such resale exemption certificates with respect to Direct Fulfillment Products and Direct Fulfillment Services and will not charge to (or seek reimbursement from) us any sales, use or similar taxes ("Sales Taxes"), add separate line items on invoices for any Sales Taxes, or add any statement to the invoices stating that the Direct Fulfillment Product or Direct Fulfillment Service prices include Sales Taxes. You will be solely liable for, and will indemnify and hold us harmless against, any and all Sales Taxes assessed or claimed upon the sale or provision of any Direct Fulfillment Products or Direct Fulfillment Services under this Agreement and against all interest, penalties, costs, and expenses (including attorneys' fees) related to such Sales Taxes. Each of the parties will use commercially reasonable efforts (at its own expense) to cooperate and provide assistance to each other with respect to any potential state or local Sales Tax audit in connection with the Direct Fulfillment Services; provided that no party will be required to provide information that is not readily available using such party's existing information systems, and no party will be required to modify or create new systems to obtain or process any such required or requested Sales Tax information. We may terminate this Schedule in its entirety or with respect to any Direct Fulfillment Product or and facility from which you provide Direct Fulfillment Services (or group of Products or facilities) if we determine that the Direct Fulfillment Services or related transactions are causing or are reasonably likely to cause any adverse tax effect.

8.      Miscellaneous: This Schedule incorporates, and you, the Direct Fulfillment Products you sell and the Direct Fulfillment Services you provide will comply with, the terms, conditions, policies, guidelines, specifications, rules, and other information applicable to the Direct Fulfillment Services and accessible on this web site for vendors ("Vendor Site") at the time of Direct Fulfillment Product shipment ("Direct Fulfillment Program Policies"), including without limitation any updates to such Direct Fulfillment Program Policies from time to time. To the extent there is a conflict between this Schedule and the Direct Fulfillment Program Policies, the terms of the Schedule will control. No force majeure or similar provision excusing performance that applies generally under this Agreement will be deemed to apply to the obligation to perform the Direct Fulfillment Services.

9.      Revisions; Continued Use: Direct Fulfillment Program Policies are Program Policies for purposes of this Agreement, and are subject to change in accordance with Section 11. YOUR CONTINUED ACCEPTANCE OF DIRECT FULFILLMENT POS OR CONTINUED USE OF VENDOR SITE FOLLOWING OUR E MAILING OR POSTING OF ANY REVISED TERMS, CONDITIONS, OR DIRECT FULFILLMENT PROGRAM POLICIES, OR ANY NOTICE OF ANY SUCH REVISIONS, WILL CONSTITUTE YOUR ACCEPTANCE OF THE REVISIONS. IF YOU DO NOT AGREE TO ANY CHANGES TO THIS SCHEDULE (INCLUDING WITHOUT LIMITATION THE DIRECT FULFILLMENT PROGRAM POLICIES), YOU MUST STOP ACCEPTING DIRECT FULFILLMENT POS.

## SCHEDULE 6

**[RESERVED]**

## SCHEDULE 7

### PROPOSITION 65

For each Product that requires a Proposition 65 Warning, you (a) will provide us with such warning in the manner specified in our Proposition 65 Program Policy in the Vendor Central Resource Center, (b) agree that our display of a Proposition 65 Warning on a Product detail page is confirmation of our receipt of that warning, and (c) will only revise or remove a Proposition 65 Warning for a Product when the prior warning is no longer legally required.

**EXHIBIT-2**

 **amazon** seller central

English ⌄    Sign in      Sell on Amazon

This article applies to selling in: **United States**

Seller Central Help  ❯  Policies, agreements, and guidelines  ❯
Amazon Services Business Solutions Agreement

# Amazon Services Business Solutions Agreement

The version of this Agreement in English is the definitive legal version. A translation into Chinese is available for your ease of reference.

**General Terms**

Welcome to **Amazon Services Business Solutions**, a suite of optional services for sellers including: Selling on Amazon, Fulfillment by Amazon, Amazon Advertising, Transaction Processing Services, and the Selling Partner API.

THIS AMAZON SERVICES BUSINESS SOLUTIONS AGREEMENT (THE **"AGREEMENT"**) CONTAINS THE TERMS AND CONDITIONS THAT GOVERN YOUR ACCESS TO AND USE OF THE SERVICES AND IS AN AGREEMENT BETWEEN YOU OR THE BUSINESS YOU REPRESENT AND AMAZON. BY REGISTERING FOR OR USING THE SERVICES, YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT, INCLUDING THE SERVICE TERMS AND PROGRAM POLICIES THAT APPLY FOR EACH COUNTRY FOR WHICH YOU REGISTER OR ELECT TO USE A SERVICE (IN EACH CASE, THE **"ELECTED COUNTRY"**).

As used in this Agreement, **"we," "us,"** and **"Amazon"** means the applicable Amazon Contracting Party and any of its applicable Affiliates, and **"you"** means the applicant (if registering for or using a Service as an individual), or the business employing the applicant (if registering for or using a Service as a business) and any of its Affiliates. Capitalized terms have the meanings given to them in this Agreement. To the extent there is a conflict between these General Terms, the Service Terms and Program Policies, the conflict will be resolved by giving precedence in the order specified in such documents, or if not specified,

the following order: the General Terms, the Service Terms, and the Program Policies.

1. **Enrollment.**

To begin the enrollment process, you must complete the registration process for one or more of the Services. Use of the Services is limited to parties that can lawfully enter into and form contracts under applicable Law (for example, the Elected Country may not allow minors to use the Services). As part of the application, or at any time during the term of this Agreement, you must provide us with your (or your business') legal name, address, phone number and e-mail address, as well as any other information we may request. Any information provided must correspond to your business name or to the name of an individual legally authorized to act on behalf of your business. Any personal data you provide to us will be handled in accordance with Amazon's Privacy Notice.

2. **Service Fee Payments; Receipt of Sales Proceeds.**

Fee details are described in the applicable Service Terms and Program Policies. You are responsible for all of your expenses in connection with this Agreement. To use a Service, you must provide us with valid credit card information from a credit card or credit cards acceptable by Amazon (**"Your Credit Card"**) as well as valid bank account information for a bank account or bank accounts acceptable by Amazon (conditions for acceptance may be modified or discontinued by us at any time without notice) (**"Your Bank Account"**). You will use only a name you are authorized to use in connection with a Service and will update all of the information you provide to us in connection with the Services as necessary to ensure that it at all times remains accurate, complete, and valid. You authorize us (and will provide us documentation evidencing your authorization upon our request) to verify your information (including any updated information), to obtain credit reports about you from time to time, to obtain credit authorizations from the issuer of Your Credit Card, and to charge Your Credit Card or debit Your Bank Account for any sums payable by you to us (in reimbursement or otherwise). All payments to you will be remitted to Your Bank Account through a banking network or by other means specified by us. Except as provided otherwise, all amounts contemplated in this Agreement will be expressed and displayed in the Local Currency, and all payments contemplated by this Agreement will be made in the Local Currency.

**If we determine that your actions or performance may result in returns, chargebacks, claims, disputes, violations of our terms or policies, violations of law or other risks to Amazon or third parties, then we may in our sole discretion withhold any payments to you for as long as we determine any**

**related risks to Amazon or third parties persist. For any amounts that we determine you owe us, we may (a) charge Your Credit Card or any other payment instrument you provide to us; (b) offset any amounts that are payable by you to us (in reimbursement or otherwise) against any payments we may make to you or amounts we may owe you; (c) invoice you for amounts due to us, in which case you will pay the invoiced amounts upon receipt; (d) reverse any credits to Your Bank Account; or (e) collect payment or reimbursement from you by any other lawful means.**

**To be eligible for fund disbursement, you must refrain from deceptive, fraudulent, or illegal activity and remain in compliance with our Program Policies. If we determine that your account—or any other account you have operated—has been used to engage in deceptive, fraudulent, or illegal activity (including the sale of counterfeit or stolen goods), or your use of the Services has harmed, or our controls identify that it might harm other sellers, customers, or Amazon's legitimate interests, then we may in our sole discretion permanently withhold any payments to you, because these activities expose Amazon to financial risks and inflict monetary damages and irreparable non-monetary harms on Amazon. We will offer you an avenue to appeal our fund withholding decision by following the procedures outlined in Amazon's policies. Successfully completing the appeal process is required to be eligible for further disbursements.**

In addition, we may require that you pay other amounts to secure the performance of your obligations under this Agreement or to mitigate the risk of returns, chargebacks, claims, disputes, violations of our terms or policies, or other risks to Amazon or third parties. These amounts may be refundable or nonrefundable in the manner we determine, and failure to comply with terms of this Agreement, including any applicable Program Policies, may result in their forfeiture.

As a security measure, we may, but are not required to, impose transaction limits on some or all customers and sellers relating to the value of any transaction or disbursement, the cumulative value of all transactions or disbursements during a period of time, or the number of transactions per day or other period of time. We will not be liable to you: (i) if we do not proceed with a transaction or disbursement that would exceed any limit established by us for a security reason, or (ii) if we permit a customer to withdraw from a transaction because an Amazon Site or Service is unavailable following the commencement of a transaction.

3.  **Term and Termination.**

The term of this Agreement will start on the date of your completed registration for use of a Service and continue until terminated by us or you as provided below. You may at any time terminate your account or this Agreement immediately on notice to us via Seller Central, email, the Contact Us form, or similar means. We may terminate your account or this Agreement for convenience with 30 days' advance notice. We may suspend or terminate your account or this Agreement immediately if we determine that (a) you have materially breached the Agreement and failed to cure within 7 days of a cure notice unless your breach exposes us to liability toward a third party, in which case we are entitled to reduce, or waive, the aforementioned cure period at our reasonable discretion; (b) your account has been, or our controls identify that it may be used for deceptive or fraudulent, or illegal activity; (c) your use of the Services has harmed, or our controls identify that it might harm, other sellers, customers, or Amazon's legitimate interests; (d) your Account Health Rating falls below our published threshold(s) for deactivation; or (e) if we are required to do so by law. We will promptly notify you of any such termination or suspension via email or similar means including Seller Central, indicating the reason and any options to appeal, except where we have reason to believe that providing this information will hinder the investigation or prevention of deceptive, fraudulent, or illegal activity, or will enable you to circumvent our safeguards. On termination of this Agreement, all related rights and obligations under this Agreement immediately terminate, except that (f) you will remain responsible for performing all of your obligations in connection with transactions entered into before termination and for any liabilities that accrued before or as a result of termination, and (g) Sections 2, 3, 4, 5, 6, 7, 8, 9, 11, 14, 15, and 18 of these General Terms and Section P-4 of the Transaction Processing Service Terms survive and the Fulfillment by Amazon Service Terms survive as set forth in Section F-13 of such terms.

4. **License.**

You grant us a royalty-free, non-exclusive, worldwide right and license for the duration of your original and derivative intellectual property rights to use any and all of Your Materials for the Services or other Amazon product or service, and to sublicense the foregoing rights to our Affiliates and operators of Amazon Associated Properties; provided, however, that we will not alter any of Your Trademarks from the form provided by you (except to re-size trademarks to the extent necessary for presentation, so long as the relative proportions of such trademarks remain the same) and will comply with your removal requests as to specific uses of Your Materials (provided you are unable to do so using standard functionality made available to you via the applicable Amazon Site or Service); provided further, however, that nothing in this Agreement will prevent or impair our right to use Your Materials without your consent to the extent that such use

is allowable without a license from you or your Affiliates under applicable Law
(e.g., fair use under United States copyright law, referential use under trademark
law, or valid license from a third party).

### 5. Representations.

Each party represents and warrants that: (a) if it is a business, it is duly
organized, validly existing and in good standing under the Laws of the country
in which the business is registered and that you are registering for the Service(s)
within such country; (b) it has all requisite right, power, and authority to enter
into this Agreement, perform its obligations, and grant the rights, licenses, and
authorizations in this Agreement; (c) any information provided or made
available by one party to the other party or its Affiliates is at all times accurate,
complete, and not misappropriated; (d) it is not subject to sanctions or
otherwise designated on any list of prohibited or restricted parties or owned or
controlled by such a party, including but not limited to the lists maintained by
the United Nations Security Council, the US Government (e.g., the US
Department of Treasury's Specially Designated Nationals list and Foreign
Sanctions Evaders list and the US Department of Commerce's Entity List), the
European Union or its member states, or other applicable government
authority; and (e) it will comply with all applicable Laws in performance of its
obligations and exercise of its rights under this Agreement.

### 6. Indemnification.

**6.1 Your indemnification obligations**. You will defend, indemnify, and hold
harmless Amazon, and our officers, directors, employees, and agents, against
any third-party claim, loss, damage, settlement, cost, expense, or other liability
(including, without limitation, attorneys' fees) (each, a "Claim") arising from or
related to (a) your non-compliance with applicable Laws; (b) Your Products,
including the offer, sale, fulfillment (except to the extent attributable to the FBA
service), refund, cancellation, return, or adjustments thereof, Your Materials, any
actual or alleged infringement of any Intellectual Property Rights by any of the
foregoing, and any personal injury, death (to the extent the injury or death is
not caused by Amazon), or property damage related thereto; (c) Your Taxes and
duties or the collection, payment, or failure to collect or pay Your Taxes or
duties, or the failure to meet tax registration obligations or duties; or (d) actual
or alleged breach of any representations you have made.

**6.2 Amazon's indemnification obligations**. Amazon will defend, indemnify, and
hold harmless you and your officers, directors, employees, and agents against
any third-party Claim arising from or related to: (a) Amazon's non-compliance
with applicable Laws; or (b) allegations that the operation of an Amazon Site
infringes or misappropriates that third party's intellectual property rights.

**6.3 Process.** If any indemnified Claim might adversely affect us, we may, to the extent permitted by applicable Law, voluntarily intervene in the proceedings at our expense. No party may consent to the entry of any judgment or enter into any settlement of an indemnified Claim without the prior written consent of the other party, which may not be unreasonably withheld; except that a party may settle any claim that is exclusively directed at and exclusively affects that party.

7. **Disclaimer & General Release.**

**a.** THE AMAZON SITES AND THE SERVICES, INCLUDING ALL CONTENT, SOFTWARE, FUNCTIONS, MATERIALS, AND INFORMATION MADE AVAILABLE ON OR PROVIDED IN CONNECTION WITH THE SERVICES, ARE PROVIDED "AS-IS." AS A USER OF THE SERVICES, YOU USE THE AMAZON SITES, THE SERVICES, AND SELLER CENTRAL AT YOUR OWN RISK. EXCEPT THOSE SET FORTH IN SECTION 5 ABOVE, TO THE FULLEST EXTENT PERMISSIBLE BY LAW, WE AND OUR AFFILIATES DISCLAIM: (i) ANY REPRESENTATIONS OR WARRANTIES REGARDING THIS AGREEMENT, THE SERVICES OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT; (ii) IMPLIED WARRANTIES ARISING OUT OF COURSE OF DEALING, COURSE OF PERFORMANCE, OR USAGE OF TRADE; AND (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM OUR NEGLIGENCE. WE DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE AMAZON SITES AND THE SERVICES WILL MEET YOUR REQUIREMENTS OR BE AVAILABLE, TIMELY, SECURE, UNINTERRUPTED, OR ERROR FREE, AND WE WILL NOT BE LIABLE FOR ANY SERVICE INTERRUPTIONS, INCLUDING BUT NOT LIMITED TO SYSTEM FAILURES OR OTHER INTERRUPTIONS THAT MAY AFFECT THE RECEIPT, PROCESSING, ACCEPTANCE, COMPLETION, OR SETTLEMENT OF ANY TRANSACTIONS.

**b.** BECAUSE AMAZON IS NOT INVOLVED IN TRANSACTIONS BETWEEN CUSTOMERS AND SELLERS OR OTHER PARTICIPANT DEALINGS, IF A DISPUTE ARISES BETWEEN ONE OR MORE PARTICIPANTS, EACH PARTICIPANT RELEASES AMAZON (AND ITS AGENTS AND EMPLOYEES) FROM CLAIMS, DEMANDS, AND DAMAGES (ACTUAL AND CONSEQUENTIAL) OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

8. **Limitation of Liability.**

WE WILL NOT BE LIABLE (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE, PRODUCT LIABILITY, OR OTHER THEORY), OR OTHERWISE) TO YOU OR ANY OTHER PERSON FOR COST OF COVER,

RECOVERY, OR RECOUPMENT OF ANY INVESTMENT MADE BY YOU OR YOUR
AFFILIATES IN CONNECTION WITH THIS AGREEMENT, OR FOR ANY LOSS OF
PROFIT, REVENUE, BUSINESS, OR DATA OR PUNITIVE OR CONSEQUENTIAL
DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, EVEN IF
AMAZON HAS BEEN ADVISED OF THE POSSIBILITY OF THOSE COSTS OR
DAMAGES. FURTHER, OUR AGGREGATE LIABILITY ARISING OUT OF OR IN
CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS
CONTEMPLATED WILL NOT EXCEED AT ANY TIME THE TOTAL AMOUNTS
DURING THE PRIOR SIX MONTH PERIOD PAID BY YOU TO AMAZON IN
CONNECTION WITH THE PARTICULAR SERVICE GIVING RISE TO THE CLAIM.

9. **Insurance.**

If the gross proceeds from Your Transactions exceed the applicable Insurance
Threshold during any month if the Elected Country is the United States, or each
month over any period of three (3) consecutive months if the Elected Country is
Canada or Mexico, or otherwise if requested by us, then within thirty (30) days
thereafter, you will maintain at your expense throughout the remainder of the
Term for each applicable Elected Country commercial general, umbrella or
excess liability insurance with the Insurance Limits per occurrence and in
aggregate covering liabilities caused by or occurring in conjunction with the
operation of your business, including products, products/completed operations
and bodily injury, with policy(ies) naming Amazon and its assignees as
additional insureds. At our request, you will provide to us certificates of
insurance, the full insurance policy, or other documents we may request for the
coverage to the following address: c/o Amazon, P.O. Box 81226, Seattle, WA
98108-1226, Attention: Risk Management.

10. **Tax Matters.**

As between the parties, you will be responsible for the collection, reporting, and
payment of any and all of Your Taxes, except to the extent that (i) Amazon
automatically calculates, collects, or remits taxes on your behalf according to
applicable law; or (ii) Amazon expressly agrees to receive taxes or other
transaction-based charges on your behalf in connection with tax calculation
services made available by Amazon and used by you. You agree to and will
comply with the Tax Policies. All fees and payments payable by you to Amazon
under this Agreement or the applicable Service Terms are exclusive of any
applicable taxes, deductions or withholding (including but not limited to cross-
border withholding taxes), and you will be responsible for paying Amazon any
of Your Taxes imposed on such fees and any deduction or withholding required
on any payment.

11. **Confidentiality and Personal Data.**

During the course of your use of the Services, you may receive Confidential Information. You agree that for the term of the Agreement and 5 years after termination: (a) all Confidential Information will remain Amazon's exclusive property; (b) you will use Confidential Information only as is reasonably necessary for your participation in the Services; (c) you will not otherwise disclose Confidential Information to any other Person except as required to comply with the Law; (d) you will take all reasonable measures to protect the Confidential Information against any use or disclosure that is not expressly permitted in this Agreement; and (e) you will retain Confidential Information only for so long as its use is necessary for participation in the Services or to fulfill your statutory obligations (e.g. tax) and in all cases will delete such information upon termination or as soon as no longer required for the fulfillment of statutory obligations. The foregoing sentence does not restrict your right to share Confidential Information with a governmental entity that has jurisdiction over you, provided that you limit the disclosure to the minimum necessary and explicitly indicate the confidential nature of the shared information to the governmental entity. You may not issue any press release or make any public statement related to the Services, or use our name, trademarks, or logo, in any way (including in promotional material) without our advance written permission, or misrepresent or embellish the relationship between us in any way. You may only use the "Available at Amazon" badge as defined in and according to the Trademark Usage Guidelines available in Seller Central; you may not use our name, trademarks, or logos in any way (including in promotional material) not covered by the Trademark Usage Guidelines without our advance written permission.

Generally, you may not use customer personal data in any way inconsistent with applicable Law. You must keep customer personal data confidential at all times (the above 5 years' term limit does not apply to customer personal data).

12. **Force Majeure.**

We will not be liable for any delay or failure to perform any of our obligations under this Agreement by reasons, events or other matters beyond our reasonable control.

13. **Relationship of Parties.**

Subject to the Transaction Processing Service Terms (if the Elected Country for a Service is the United States), you and we are independent contractors, and nothing in this Agreement will create any partnership, joint venture, agency, franchise, sales representative, or employment relationship between us. You will have no authority to make or accept any offers or representations on our behalf. This Agreement will not create an exclusive relationship between you and us.

Nothing expressed or mentioned in or implied from this Agreement is intended or will be construed to give to any person other than the parties to this Agreement any legal or equitable right, remedy, or claim under or in respect to this Agreement. This Agreement and all of the representations, warranties, covenants, conditions, and provisions in this Agreement are intended to be and are for the sole and exclusive benefit of Amazon, you, and customers. As between you and us, you will be solely responsible for all obligations associated with the use of any third party service or feature that you permit us to use on your behalf, including compliance with any applicable terms of use. You will not make any statement, whether on your site or otherwise, that would contradict anything in this section.

14. **Suggestions and Other Information.**

If you or any of your Affiliates elect to provide or make available suggestions, comments, ideas, improvements, or other feedback or materials to us in connection with or related to any Amazon Site or Service (including any related Technology), we will be free to use, disclose, reproduce, modify, license, transfer and otherwise distribute, and exploit any of the foregoing information or materials in any manner. In order to cooperate with governmental requests, to protect our systems and customers, or to ensure the integrity and operation of our business and systems, we may access and disclose any information we consider necessary or appropriate, including but not limited to user contact details, IP addresses and traffic information, usage history, and posted content. If we make suggestions on using the Services, you are responsible for any actions you take based on our suggestions.

15. **Modification.**

15.1. We will provide at least 15 days' advance notice in accordance with Section 18 for changes to the Agreement.

15.2 However, we may change or modify the Agreement at any time with immediate effect (a) for legal, regulatory, fraud and abuse prevention, or security reasons; (b) to change existing features or add additional features to the Services (where this does not materially adversely affect your use of the Services); or (c) to restrict products or activities that we deem unsafe, inappropriate, or offensive. We will notify you about any change or modification in accordance with Section 18.

15.3 Your continued use of the Services after the effective date of any change to this Agreement in accordance with this Section 15 will constitute your

acceptance of that change. If any change is unacceptable to you, you agree not to use the Services and to end the Agreement as described in Section 3.

### 16. Password Security.

Any password we provide to you may be used only during the Term to access Seller Central (or other tools we provide, as applicable) to use the Services, electronically accept Your Transactions, and review your completed transactions. You are solely responsible for maintaining the security of your password. You may not disclose your password to any third party (other than third parties authorized by you to use your account in accordance with this Agreement) and are solely responsible for any use of or action taken under your password. If your password is compromised, you must immediately change your password.

### 17. Export.

You will not directly or indirectly export, re-export, transmit, or cause to be exported, re-exported or transmitted, any commodities, software or technology to any country, individual, corporation, organization, or entity to which such export, re-export, or transmission is restricted or prohibited, including any country, individual, corporation, organization, or entity under sanctions or embargoes administered by the United Nations, US Departments of State, Treasury or Commerce, the European Union, or any other applicable government authority.

### 18. Miscellaneous.

The Governing Laws will govern this Agreement, without reference to rules governing choice of laws or the Convention on Contracts for the International Sale of Goods. If the Elected Country is the United States, Canada, or Mexico, **Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court**, except that (i) either party may elect to proceed in a small claims court that is a Governing Court if your claims qualify; (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights; and (iii) we may bring any claims related to your sale of counterfeit products on the Amazon Site in the Governing Courts or the court of your domicile or habitual residence and seek any remedy available under law related to those claims. **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award the same damages and relief as a court**

**(including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would.** Before you may begin an arbitration proceeding, you must send a letter notifying us of your intent to pursue arbitration and describing your claim to our registered agent, CSC 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules. The expedited procedures of the AAA's rules will apply only in cases seeking exclusively monetary relief under $50,000, and in such cases the hearing will be scheduled to take place within 90 days of the arbitrator's appointment. For all cases, the AAA commercial fee schedule governs the payment of all filing, administration and arbitrator fees. The underlying award in the arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. **Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration **Amazon and you each waive any right to a jury trial**.

You may not assign this Agreement, by operation of law or otherwise, without our prior written consent. Any attempt to assign or otherwise transfer in violation of this section is void; provided, however, that upon notice to Amazon, you may assign or transfer this Agreement, in whole or in part, to any of your Affiliates as long as you remain liable for your obligations that arose prior to the effective date of the assignment or transfer under this Agreement. You agree that we may assign or transfer our rights and obligations under this Agreement: (a) in connection with a merger, consolidation, acquisition or sale of all or substantially all of our assets or similar transaction; or (b) to any Affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for Amazon as the party to this Agreement. Subject to that restriction, this Agreement will be binding on, inure to, and be enforceable against the parties and their respective successors and assigns. We may perform any of our obligations or exercise any of our rights under this Agreement through one or more of our Affiliates. Amazon retains the right to immediately halt any of Your Transactions, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by applicable Program Policies. Because Amazon is not your agent (except for the limited purpose set out in the Transaction Processing Service Terms (if the Elected Country for a Service is the United States)), or the customer's agent for any purpose, Amazon will not act as either party's agent in connection with resolving any disputes between participants related to or arising out of any transaction.

Amazon will provide notice to you under this Agreement by posting changes to Seller Central or to the applicable Amazon Services site to which the changes relate (such as the Developer Site accessible through your account), by sending you an email notification, or by similar means. You must send all notices and other communications relating to Amazon to our Selling Partner Support team via Seller Central, email, the Contact Us form, or similar means. We may also communicate with you electronically and in other media, and you consent to such communications. You may change your e-mail addresses and certain other information in Seller Central, as applicable. You will ensure that all of your information is up to date and accurate at all times.

If any provision of this Agreement is deemed unlawful, void, or for any reason unenforceable, then that provision will be deemed severable from these terms and conditions and will not affect the validity and enforceability of any remaining provisions. If the Elected Country is Canada, then it is the express wish of the parties that this Agreement and the applicable Service Terms and Program Policies have been drafted in English. (The following is a French translation of the preceding sentence: Si le pays de service est le Canada, les parties conviennent que la présente autorisation et tous les termes et conditions applicables s'y rattachant soient rédigés en anglais.) We may make available translations to this Agreement and the applicable Service Terms and Program Policies, but the English version will control. This Agreement represents the entire agreement between the parties with respect to the Services and related subject matter and supersedes any previous or contemporaneous oral or written agreements and understandings.

**Definitions**

As used in this Agreement, the following terms have the following meanings:

**"Affiliate"** means, with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with that entity.

**"Amazon Associated Properties"** means any website or other online point of presence, mobile application, service or feature, other than an Amazon Site, through which any Amazon Site, or products or services available on any of them, are syndicated, offered, merchandised, advertised, or described.

**"Amazon Contracting Party"** means the party outlined below.

- If the Elected Country is Canada:

| Service | Amazon Contracting Party |
|---|---|
| Selling on Amazon | Amazon.com.ca ULC |
| Selling on Amazon (if your account is enabled to list Optional Coverage Plans) | Amazon.com.ca ULC |
| Fulfillment by Amazon | Amazon.com.ca ULC |
| Amazon Advertising | Amazon Advertising Canada, Inc. |

- If the Elected Country is Mexico:

| Service | Amazon Contracting Party |
|---|---|
| Selling on Amazon | Servicios Comerciales Amazon México S. de R.L. de C.V. |
| Fulfillment by Amazon | Servicios Comerciales Amazon México S. de R.L. de C.V. |
| Amazon Advertising | Servicios Comerciales Amazon México S. de R.L. de C.V. |

- If the Elected Country is the United States:

| Service | Amazon Contracting Party |
|---|---|
| Selling on Amazon | Amazon.com Services LLC |
| Selling on Amazon (if your account is enabled to list Optional Coverage Plans) | Amazon.com Services LLC |
| Fulfillment by Amazon | Amazon.com Services LLC |
| Amazon Advertising | Amazon.com Services LLC |
| Transaction Processing Services | Amazon Payments, Inc., Amazon Capital Services, Inc., or Amazon.com Services LLC, according to the Transaction Processing Services Terms |

If you register for or use the Selling Partner API, the Amazon Contracting Party is the Contracting Party that provides the applicable Service you use in

connection with the Selling Partner API.

**"Amazon Site"** means, as applicable, the CA Amazon Site, the MX Amazon Site, or the US Amazon Site.

**"CA Amazon Site"** means the website, the primary home page of which is identified by the url www.amazon.ca, and any successor or replacement of such website.

**"Confidential Information"** means information relating to us, to the Services, or Amazon customers that is not known to the general public including, but not limited to, any information identifying or unique to specific customers; reports, insights, and other information about the Services; data derived from the Services except for data (other than customer personal data) arising from the sale of your products comprising of products sold, prices, sales, volumes and time of the transaction; and technical or operational specifications relating to the Services. For the purposes of this Agreement, customer personal data constitutes Confidential Information at all times.

**"Content"** means copyrightable works under applicable Law and content protected by database rights under applicable Law.

**"Excluded Products"** means the items described on the applicable <u>Restricted Products pages</u> in Seller Central, any other applicable Program Policy, or any other information made available to you by Amazon.

**"Governing Courts"** means the applicable one of the following:

- the state or Federal court in King County, Washington (if the Elected Country is Canada, Mexico, or the United States),

**"Governing Laws"** means the applicable one of the following:

- the laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law (if the Elected Country is Canada, Mexico, or the United States),

**"Insurance Limits"** means the applicable one of the following:

- One Million Canadian Dollars ($1,000,000) (if the Elected Country is Canada),
- Ten Million Mexican Pesos ($10,000,000) (if the Elected Country is Mexico),
- One Million U.S. Dollars ($1,000,000) (if the Elected Country is the United States).

**"Insurance Threshold"** means the applicable one of the following:

- Ten Thousand Canadian Dollars ($10,000) (if the Elected Country is Canada),
- One Hundred Thousand Mexican Pesos ($100,000) (if the Elected Country is Mexico),
- Ten Thousand U.S. Dollars ($10,000) (if the Elected Country is the United States).

**"Intellectual Property Right"** means any patent, copyright, Trademark, domain name, moral right, trade secret right, or any other intellectual property right arising under any Laws and all ancillary and related rights, including all rights of registration and renewal and causes of action for violation, misappropriation or infringement of any of the foregoing.

**"Law"** means any law, ordinance, rule, regulation, order, license, permit, judgment, decision, or other requirement, now or in the future in effect, of any governmental authority (e.g., on a federal, state, or provincial level, as applicable) of competent jurisdiction.

**"Local Currency"** means the applicable one of the following:

- U.S. Dollars (if the Elected Country is the United States),
- Canadian Dollars (if the Elected Country is Canada),
- Mexican Pesos (if the Elected Country is Mexico),

**"MX Amazon Site"** means the website, the primary home page of which is identified by the url www.amazon.com.mx, and any successor or replacement of such website.

**"Optional Coverage Plans"** means warranties, extended service plans and related offerings, in each case as determined by us, that you offer.

**"Order Information"** means, with respect to any of Your Products ordered through an Amazon Site, the order information and shipping information that we provide or make available to you.

**"Person"** means any individual, corporation, partnership, limited liability company, governmental authority, association, joint venture, division, or other cognizable entity, whether or not having distinct legal existence.

**"Program Policies"** means all policies and program terms provided on the Program Policies page.

**"Sales Proceeds"** means the gross proceeds from any of Your Transactions, including (a) all shipping and handling, gift wrap and other charges; (b) taxes and customs duties to the extent specified in the applicable Tax Policies; and (c)

in the case of invoiced orders, any amounts that customers fail to pay to us or our Affiliates on or before the applicable invoice due date.

**"Seller Central"** means the online portal and tools made available by Amazon to you, for your use in managing your orders, inventory, and presence on a particular Amazon Site or any other online point of presence.

**"Service"** means each of the following services: Selling on Amazon, Fulfillment by Amazon, Amazon Advertising (including Amazon Sponsored Products), the Selling Partner APIs, and, if the Elected Country for a Service is the United States, the Transaction Processing Services, together in each case with any related services and materials we make available.

**"Service Terms"** means the service terms applicable to each Service, which are made part of this Agreement upon the date you elect to register for or use the applicable Service, and any subsequent modifications we make to those terms.

**"Technology"** means any: (a) ideas, procedures, processes, systems, methods of operation, concepts, principles, and discoveries protected or protectable under the Laws of any jurisdiction; (b) interfaces, protocols, glossaries, libraries, structured XML formats, specifications, grammars, data formats, or other similar materials; and (c) software, hardware, code, technology, or other functional item.

**"Trademark"** means any trademark, service mark, trade dress (including any proprietary "look and feel"), trade name, other proprietary logo or insignia, or any other source or business identifier, protected or protectable under any Laws.

**"US Amazon Site"** means that website, the primary home page of which is identified by the URL www.amazon.com, and any successor or replacement of such website.

**"Your Materials"** means all Technology, Your Trademarks, Content, Your Product information, data, materials, and other items or information provided or made available by you or your Affiliates to Amazon or its Affiliates.

**"Your Personnel"** means any third party warranting, administering or otherwise involved in the offer, sale, performance, or fulfillment of Your Products, including any of your employees, representatives, agents, contractors, or subcontractors.

**"Your Product"** means any product or service (including Optional Coverage Plans) that you: (a) have offered through the Selling on Amazon Service; (b)

have made available for advertising through the Amazon Advertising Service; or (c) have fulfilled or otherwise processed through the Fulfillment by Amazon Service.

**"Your Sales Channels"** means all sales channels and other means through which you or any of your Affiliates offers products or services, other than physical stores.

**"Your Taxes"** means any and all sales, goods and services, use, excise, premium, import, export, value added, consumption, and other taxes, regulatory fees, levies (specifically including environmental levies), or charges and duties assessed, incurred, or required to be collected or paid for any reason (a) in connection with any advertisement, offer or sale of products or services by you on or through or in connection with the Services; (b) in connection with any products or services provided for which Your Products are, directly or indirectly, involved as a form of payment or exchange; or (c) otherwise in connection with any action, inaction, or omission of you or your Affiliates, or any Persons providing products or services, or your or their respective employees, agents, contractors, or representatives, for which Your Products are, directly or indirectly, involved as a form of payment or exchange. Also, if the Elected Country is the United States, Mexico, or Canada as it is used in the Fulfillment by Amazon Service Terms, this defined term also means any of the types of taxes, duties, levies, or fees mentioned above that are imposed on or collectible by Amazon or any of its Affiliates in connection with or as a result of fulfillment services including the storage of inventory or packaging of Your Products and other materials owned by you and stored by Amazon, shipping, gift wrapping, or other actions by Amazon in relation to Your Products pursuant to the Fulfillment by Amazon Service Terms.

**"Your Trademarks"** means Trademarks of yours that you provide to us: (a) in non-text form for branding purposes; and (b) separate from (and not embedded or otherwise incorporated in) any product specific information or materials.

**"Your Transaction"** means any sale of Your Product(s) through an Amazon Site.

**Selling on Amazon Service Terms**

The Selling on Amazon Service (**"Selling on Amazon"**) is a Service that allows you to offer certain products and services directly on the Amazon Sites.

These Selling on Amazon Service Terms are part of the Agreement, but, unless specifically provided otherwise, concern and apply only to your participation in Selling on Amazon. BY REGISTERING FOR OR USING THE SELLING ON AMAZON

SERVICE, YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE TO BE BOUND BY THE AGREEMENT, INCLUDING THESE SELLING ON AMAZON SERVICE TERMS. **NOTWITHSTANDING THE PREVIOUS SENTENCE, IF YOU HAVE ENTERED INTO A SEPARATE AGREEMENT THAT PERMITS YOU TO OFFER YOUR PRODUCTS THROUGH A PARTICULAR AMAZON SITE (E.G., A MERCHANTS@ AMAZON.COM PROGRAM AGREEMENT, MERCHANTS @AMAZON.CO.JP PROGRAM AGREEMENT OR ANY PREDECESSOR OF THOSE AGREEMENTS), THEN TO THE EXTENT THAT YOU CONTINUE TO LIST AND SELL YOUR PRODUCTS ON THAT AMAZON SITE PURSUANT TO SUCH SEPARATE AGREEMENT, TRANSACTIONS OF YOUR PRODUCTS ON THAT AMAZON SITE AND ANY TAX SERVICES WE MAKE AVAILABLE UNDER THAT AGREEMENT ARE GOVERNED BY THE TERMS OF THAT AGREEMENT AND NOT BY THESE SELLING ON AMAZON SERVICE TERMS.**

**S-1 Your Product Listings and Orders.**

**S-1.1 Products and Product Information.** You will provide accurate and complete Required Product Information for each product or service that you offer through any Amazon Site and promptly update that information as necessary to ensure it at all times remains accurate and complete. You will also ensure that Your Materials, Your Products (including packaging) and your offer and subsequent sale of any of the same on any Amazon Site comply with all applicable Laws (including all minimum age, marking and labeling requirements) and do not contain any sexually explicit (except to the extent expressly permitted under our applicable Program Policies), defamatory or obscene materials. You may not provide any information for, or otherwise seek to offer any Excluded Products on any Amazon Sites; or provide any URL Marks for use, or request that any URL Marks be used, on any Amazon Site. If you offer a product for sale on an Amazon Site that requires a warning under California Health & Safety Code Section 25249.6 (a "Proposition 65 Warning") you (a) will provide us with such warning in the manner specified in our Program Policies, (b) agree that our display of a Proposition 65 Warning on a product detail page is confirmation of our receipt of that warning, and (c) will only revise or remove a Proposition 65 Warning for a product when the prior warning is no longer legally required.

**S-1.2 Product Listing; Merchandising; Order Processing.** We will enable you to list Your Products on a particular Amazon Site, and conduct merchandising and promote Your Products in accordance with the Agreement (including via the Amazon Associated Properties or any other functions, features, advertising, or programs on or in connection with the applicable Amazon Site). We may use mechanisms that rate, or allow shoppers to rate, Your Products and your performance as a seller and Amazon may make these ratings and feedback

publicly available. We will provide Order Information to you for each order of Your Products through the applicable Amazon Site. We will also receive all Sales Proceeds on your behalf for each of these transactions and will have exclusive rights to do so, and will remit them to you in accordance with these Selling on Amazon Service Terms. We may permit certain customers to place invoiced orders for Your Products, in which case remittance of Sales Proceeds may be delayed according to each customer's invoicing terms. You will accept and fulfill invoiced orders in the same manner as you accept and fulfill non-invoiced orders, except as otherwise provided in this Agreement.

**S-1.3 Shipping and Handling Charges.** For Your Products ordered by customers on or through an Amazon Site that are not fulfilled using Fulfillment by Amazon, you will determine the shipping and handling charges subject to our Program Policies and standard functionality (including any category-based shipping and handling charges we determine, such as for products offered by sellers on the Individual selling plan and BMVD Products generally). When we determine the shipping and handling charges, you will accept them as payment in full for your shipping and handling. Please refer to the Fulfillment by Amazon Service Terms for Your Products that are fulfilled using Fulfillment by Amazon.

**S-1.4 Credit Card Fraud and Unpaid Invoices.** We will bear the risk of (a) credit card fraud (i.e., a fraudulent purchase arising from the theft and unauthorized use of a third party's credit card information) occurring in connection with Your Transactions, and (b) late payments or defaults by customers in connection with invoiced orders for Your Products, except, in each case, in connection with Seller-Fulfilled Products that are not fulfilled strictly in accordance with the Order Information and Shipment Information. You will bear all other risk of fraud or loss.

**S-2 Sale and Fulfillment; Refunds and Returns.**

**S-2.1 Sale and Fulfillment.** Other than as described in the Fulfillment by Amazon Service Terms for each Amazon Site for which you decide to register or use the Selling on Amazon Service, you will: (a) source, offer, sell, and fulfill your Seller-Fulfilled Products, and source, offer, and sell your Amazon-Fulfilled Products, in each case in accordance with the terms of the applicable Order Information, this Agreement, and all terms provided by you or us and displayed on the applicable Amazon Site at the time of the order and be solely responsible for and bear all risk for those activities; (b) package each of Your Products in a commercially reasonable manner complying with all applicable packaging and labeling requirements, including any warnings or instructions necessary to safely use Your Products, and ship each of Your Products on or before its Expected Ship Date; (c) retrieve Order Information at least once each

business day; (d) only cancel Your Transactions as permitted pursuant to your terms and conditions appearing on the applicable Amazon Site at the time of the applicable order or as may be required under this Agreement; (e) fulfill Your Products throughout the Elected Country (except to the extent prohibited by Law or this Agreement); (f) provide to Amazon information regarding fulfillment and order status and tracking (to the extent available), in each case as requested by us using the processes designated by us, and we may make any of this information publicly available; (g) comply with all Street Date instructions; (h) ensure that you are the seller of each of Your Products; (i) include an order-specific packing slip, and, if applicable, any tax invoices, within each shipment of Your Products; (j) identify yourself as the seller of each of Your Products on all packing slips or other information included or provided in connection with Your Products and as the Person to which a customer may return the applicable product; and (k) not send customers emails confirming orders or fulfillment of Your Products. If any of Your Products are fulfilled using Fulfillment by Amazon, the Fulfillment by Amazon Service Terms for the applicable Amazon Site will apply to the storage, fulfillment, and delivery of such Amazon-Fulfilled Products.

**S-2.2 Cancellations, Returns, and Refunds.** The Amazon Refund Policies for the applicable Amazon Site will apply to Your Products. Subject to Section F-6, for any of Your Products fulfilled using Fulfillment by Amazon, you will promptly accept, calculate, and process cancellations, returns, refunds, and adjustments in accordance with this Agreement and the Amazon Refund Policies for the applicable Amazon Site, using functionality we enable for your account. Without limiting your obligations, we may in our sole discretion accept, calculate, and process cancellations, returns, refunds, and adjustments for the benefit of customers. You will route any payments to customers in connection with Your Transactions through Amazon. We will make any payments to customers in the manner we determine, and you will reimburse us for all amounts we pay.

**S-3 Problems with Your Products.**

**S-3.1 Delivery Errors and Nonconformities; Recalls.** You are responsible for any non-performance, non-delivery, misdelivery, theft, or other mistake or act in connection with the fulfillment of Your Products, except to the extent caused by: (a) credit card fraud for which we are responsible under Section S-1.4; or (b) our failure to make available to you Order Information as it was received by us or resulting from address verification. Notwithstanding the previous sentence, for those of Your Products that are fulfilled using Fulfillment by Amazon, if any, the Fulfillment by Amazon Service Terms for the applicable Amazon Site will apply to non-delivery, misdelivery, theft, or other mistake or act in connection with the fulfillment of those of Your Products. You are also responsible for any

non-conformity or defect in, any public or private recall of, or safety alert of any
of Your Products or other products provided in connection with Your Products.
You will notify us promptly as soon as you have knowledge of any public or
private recalls, or safety alerts of Your Products or other products provided in
connection with Your Products.

**S-3.2 A-to-z Guarantee and Chargebacks if the Elected Country is Canada or
Mexico.** If we inform you that we have received or initiated a claim under the "A-
to-z Guarantee" offered on a particular Amazon Site or other dispute relating to
the offer, sale or fulfillment of Your Products (other than a chargeback),
concerning one of Your Transactions, you will have 30 days to appeal our
decision of the claim. If we find that a claim, chargeback, or dispute is your
responsibility, you (a) will not take recourse against the customer, and (b) are
responsible for reimbursing us in accordance with the Service Fee Payments
section of this Agreement for the amount paid by the customer (including taxes
and shipping and handling charges, but excluding any Referral Fees that we
retained as defined in Section S-4), and all other fees and expenses associated
with the original transaction (such as credit card, bank, payment processing, re-
presentment, or penalty fees) and any related chargebacks or refunds, to the
extent payable by us.

**S-3.3 A-to-z Guarantee, A-to-z Claims Process, and Chargebacks if the
Elected Country is the United States.** Claims that we receive or initiate under
the "A-to-z Guarantee" or the "A-to-z Claims Process for Property Damage and
Personal Injury" will be governed by the Program Policy for such claims.


If we find that any claim, chargeback, or dispute is your responsibility, (i) you
will not take recourse against the customer, and (ii) if Amazon resolves the claim
directly with the customer and does not waive its right of indemnification, you
will reimburse us in accordance with Section 2 of this Agreement to the extent
of your responsibility (not to exceed the amount paid by Amazon to resolve the
claim), including taxes and shipping and handling charges (but excluding any
Referral Fees that we retained as defined in Section S-4), and all other fees and
expenses associated with the original transaction (such as credit card, bank,
payment processing, re-presentment, or penalty fees) and any related
chargebacks or refunds.

**S-4 Compensation.**

You will pay us: (a) the applicable Referral Fees; (b) any applicable Variable
Closing Fee; (c) the non-refundable Selling on Amazon Subscription Fee in
advance each month; and (d) any other applicable fees described in this

Agreement (including any applicable Program Policies). **"Selling on Amazon Subscription Fee"** means the fee specified as such on the Selling on Amazon Fee Schedule for the applicable Amazon Site at the time such fee is payable. With respect to each of Your Transactions: (i) **"Sales Proceeds"** has the meaning set out in this Agreement; (ii) **"Variable Closing Fee"** means the applicable fee, if any, as specified on the Variable Closing Fee Schedule for the applicable Amazon Site; and (iii) **"Referral Fee"** means the applicable fee based on the Sales Proceeds from Your Transaction through the applicable Amazon Site specified on the Selling on Amazon Fee Schedule for that Amazon Site at the time of Your Transaction, based on the categorization by Amazon of the type of product that is the subject of Your Transaction; provided, however, that Sales Proceeds will not include any shipping charges set by us in the case of Your Transactions that consist solely of products fulfilled using Fulfillment by Amazon.

**S-5 Remittance of Sales Proceeds & Refunds.**

Except as provided in Section 2 of the General Terms orotherwise stated in this Agreement, we will remit to you your available balance on a bi-weekly (14 day) (or at our option, more frequent) basis, which may vary for each Elected Country. For each remittance, your available balance is equal to any Sales Proceeds not previously remitted to you as of the applicable Remittance Calculation Date (which you will accept as payment in full for Your Transactions), less: (a) the Referral Fees; (b) the applicable Variable Closing Fee; (c) any Selling on Amazon Subscription Fees; (d) any other applicable fees described in this Agreement (including any applicable Program Policies); (e) any amounts we require you to maintain in your account balance pursuant to this Agreement (including payments withheld pursuant to <u>Section 2 of the General Terms</u>, <u>Section S-1.4</u>, <u>Section S-3.2</u>, <u>Section S-3.3</u>, and applicable Program Policies); and (f) any taxes that Amazon automatically calculates, collects and remits to a tax authority according to applicable law, as specified in the Tax Policies.

We may establish a reserve on your account based on our assessment of risks to Amazon or third parties posed by your actions or performance, and we may modify the amount of the reserve from time to time at our sole discretion.

When you either initially provide or later change Your Bank Account information, the Remittance Calculation Date may be deferred by up to 14 days. For sellers that registered after October 30, 2011 and are on the Individual selling plan, the remittance amount will not include Sales Proceeds from the 14-day period before the date of remittance. If you refund money to a customer in connection with one of Your Transactions, and the refund is routed through

us (or our Affiliate), on the next available Remittance Calculation Date we will refund to you the amount of the Referral Fee paid by you to us attributable to the amount of the customer refund (including refunded taxes and customs duties only to the extent specified in the applicable Tax Policies), less the Refund Administration Fee for each of Your Products refunded that is not a BMVD Product, which amount we may retain as an administrative fee; provided, however, that in the case of a complete refund of Sales Proceeds for a Media Product, we will refund to you the full amount of any Variable Closing Fee paid by you to us (and in the case of a partial refund of Sales Proceeds for a Media Product, we will not refund to you any portion of any Variable Closing Fee paid by you to us). We will remit any amounts to be refunded by us pursuant to this subsection from time to time together with the next remittance to be made by us to you. **"Refund Administration Fee"** means the applicable fee described on the Refund Administration Fee Schedule for the applicable Amazon Site.

Net Sales Proceeds from non-invoiced orders will be credited to your available balance when they are received by us or our Affiliates. Sales Proceeds from invoiced orders will be credited to your available balance: (a) if you have elected in advance to pay a fee to accelerate remittance of Sales Proceeds from invoiced orders, on the day all of Your Products included in an invoiced orders are shipped; or (b) otherwise, no later than the seventh day following the date that an invoiced order becomes due.

**S-6 Amazon's Websites and Services.**

Amazon has the right to determine, the design, content, functionality, availability and appropriateness of its websites, selection, and any product or listing in the Amazon Stores, and all aspects of each Service, including your use of the same. Amazon may assign any of these rights or delegate any of its responsibilities.

**S-7 Continuing Guarantees**

Guarantees. We require the following continuing guarantees from you.

S-7.1 Pesticides. If any of Your Products is a "pesticide" being offered or sold in the United States or other product regulated under the US Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") or its implementing regulations, then you provide to us the following continuing guaranty that: (a) you are a resident of the United States; and (b) with respect to each such product, the pesticides and other FIFRA regulated products comprising each sale, shipment, or other delivery made previously or hereafter are: (i) lawfully registered with the US Environmental Protection Agency at the time of sale, shipment, or delivery, or

fully qualified for a specific exemption from the FIFRA registration requirements at the time of sale, shipment, or delivery, (ii) compliant with all requirements of FIFRA and its implementing regulations at the time of sale, shipment, or delivery, and (iii) provided by you in the original, unbroken packaging.

S-7.2 Foods, Drugs, Medical Devices, and Cosmetics. If any of Your Products is a "food", "drug", "medical device", or "cosmetic" being offered or sold in the United States or other product regulated under the U.S. Federal Food, Drug, and Cosmetic Act ("FFDCA") or its implementing regulations, then you provide us with the following continuing guaranty that with respect to all such products comprising each sale, shipment, or other delivery made previously or hereafter are: (i) not adulterated or misbranded within the meaning of the FFDCA, (ii) compliant with all requirements of FFDCA and its implementing regulations at the time of sale, shipment, or delivery, and (iii) provided by you in the original, unbroken packaging.

**Selling on Amazon Definitions**

**"Amazon-Fulfilled Products"** means any of Your Products that are fulfilled using the Fulfillment by Amazon Service.

**"Amazon Refund Policies"** means the return and refund policies published on the applicable Amazon Site and applicable to products and services offered via that Amazon Site.

**"BMVD Product"** means any book, magazine or other publication, sound recording, video recording, and/or other media product in any format, including any subscription, in each case excluding any software product, computer game, and/or video game.

**"Excluded Offer"** means any discount, rebate, promotional offer, or other term of offer and/or sale that you: (a) have attempted to make available through a particular Amazon Site but that we do not honor or support (but only until such time as we honor or support the same on such Amazon Site); or (b) make available solely to third parties that either (i) purchase products solely for resale and who are not end users of such products (i.e., wholesale purchasers), or (ii) if the Elected Country is Canada, Mexico, or the United States, have affirmatively elected and opted-in to participate in your or one of your Affiliates' membership-based customer loyalty or customer incentive programs.

**"Expected Ship Date"** means, with respect to any of Your Products, either: (a) the end of the shipping availability period (which begins as of the date on which the relevant order is placed by the customer), or the shipping availability date,

as applicable, specified by you in the relevant inventory/product data feed for
Your Product; or (b) if you do not specify shipping availability information in
such inventory/product data feed or that Your Product is in a product category
that Amazon designates as requiring shipment within two (2) business days, two
(2) business days after the date on which the relevant order is placed by the
customer.

**"Media Product"** means any book, magazine or other publication, sound
recording, video recording, software product, computer game, videogame, or
other media product in any format, including any related subscription, offered
through an Amazon Site.

**"Purchase Price"** means the total amount payable or paid for Your Product
(including taxes and shipping and handling charges only to the extent specified
in the applicable Tax Policies).

**"Remittance Calculation Date"** is the date that is two (2) business days prior to
the date of remittance (the **"Remittance Calculation Date"**).

**"Required Product Information"** means, with respect to each of Your Products
in connection with a particular Amazon Site, the following (except to the extent
expressly not required under the applicable Program Policies): (a) description,
including as applicable, location-specific availability and options, scheduling
guidelines and service cancellation policies; (b) SKU and UPC/EAN/JAN
numbers, and other identifying information as Amazon may reasonably request;
(c) information regarding in-stock status and availability, shipping limitations or
requirements, and Shipment Information (in each case, in accordance with any
categorizations prescribed by Amazon from time to time); (d) categorization
within each Amazon product category and browse structure as prescribed by
Amazon from time to time; (e) digitized image that accurately depicts only Your
Product, complies with all Amazon image guidelines, and does not include any
additional logos, text or other markings; (f) Purchase Price; (g) shipping and
handling charge (in accordance with our standard functionality); (h) any text,
disclaimers, warnings, notices, labels, warranties, or other content required by
applicable Law to be displayed, or that are necessary for the safe use of Your
Product, in connection with the offer, merchandising, advertising, or sale of
Your Product; (i) any vendor requirements, restocking fees or other terms and
conditions applicable to such product that a customer should be aware of prior
to purchasing the product; (j) brand; (k) model; (l) product dimensions; (m)
weight; (n) a delimited list of technical specifications; (o) SKU and UPC/EAN/JAN
numbers (and other identifying information as we may reasonably request) for
accessories related to Your Product that is available in our catalog; (p) the state
or country Your Product ships from; and (q) any other information reasonably

requested by us (e.g., the condition of used or refurbished products; and invoices and other documentation demonstrating the safety and authenticity of Your Products).

**"Seller-Fulfilled Products"** means any of Your Products that are not fulfilled using the Fulfillment by Amazon Service.

**"Shipment Information"** means, with respect to any of Your Products, the estimated or promised shipment and delivery date.

**"Street Date"** means the date(s), if any, specified by the manufacturer, distributor, and/or licensor of a product as the date before which specified information regarding such product (e.g., title of a book) should not be disclosed publicly, or such product should not be delivered or otherwise made available to customers.

**"URL Marks"** means any Trademark, or any other logo, name, phrase, identifier, or character string, that contains or incorporates any top level domain (e.g., .com, .edu, .ca, .fr, .jp) or any variation of a top level domain (e.g., dot com, dotcom, net, or com).

**"Your Transaction"** is defined in the General Terms of this Agreement; however, as used in these Selling on Amazon Service Terms, it means any and all such transactions through Selling on Amazon only.

**Fulfillment by Amazon Service Terms**

Fulfillment by Amazon (**"FBA"**) provides fulfillment and associated services for Your Products.

These FBA Service Terms are part of the Agreement, and, unless specifically provided otherwise, concern and apply only to your participation in FBA. BY REGISTERING FOR OR USING FBA, YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE TO BE BOUND BY THE AGREEMENT, INCLUDING THESE FBA SERVICE TERMS. You expressly agree that Amazon may engage its Affiliate(s) or a third party in order to complete one or more of the fulfillment and associated services outlined below.

## Fulfillment Services

**F-1 Your Products**

Once you are accepted into FBA, you must apply to register each product you offer that you wish to include in the FBA program. We may refuse registration in FBA of any product, including on the basis that it is an FBA Excluded Product or that it violates applicable Program Policies. You may at any time withdraw registration of any of Your Products from FBA.

**F-2 Product and Shipping Information**

You will, in accordance with applicable Program Policies, provide accurate and complete information about Your Products registered in FBA, and will provide Fulfillment Requests for any Units fulfilled using FBA that are not sold through an Amazon Site (**"Multi-Channel Fulfillment Units"**). You will promptly update any information about Your Products in accordance with our requirements and as necessary so that the information is at all times accurate and complete.

**F-3 Shipping to Amazon**

**F-3.1** Except as otherwise provided in Section F-3.4 and Section F-5, FBA is limited to Units that are shipped to and from fulfillment centers located within the applicable Elected Country, to be delivered to customers in the same Elected Country only. You will ship Units to us in accordance with applicable Program Policies. You will be responsible for all costs incurred to ship the Units to the shipping destination (including costs of freight and transit insurance) and Amazon will not pay any shipping costs. You are responsible for payment of all customs, duties, taxes, and other charges. In the case of any improperly packaged or labeled Unit, we may return the Unit to you at your expense (pursuant to Section F-7) or re-package or re-label the Unit and charge you an administrative fee.

**F-3.2** You will not deliver to us any Unsuitable Unit; we may reject any shipment of Your Products.

**F-3.3** We may, at our option, allow you to ship Units at your expense (as described in Section F-9.2) to fulfillment centers using discounted shipping rates that we may make available to you for certain carriers. In such event, you will use the processes and supply the information that we require for you to obtain such discounted rates. You also must comply with standard operating procedures, weight and size restrictions, and other shipping requirements of the applicable carriers. If we provide you with the estimated shipping costs prior to shipment, you acknowledge and agree that actual shipping costs may vary from such estimates. In addition, if the weight of the Unit, as determined by the applicable carrier, differs from that submitted by you to us for purposes of determining the estimated shipping costs, then: (a) you may be charged more

than the estimated shipping costs if the carrier determines that such Unit weighs more than as submitted by you; or (b) you may be charged the full amount of the estimated shipping costs even if the carrier determines the weight to be less than that submitted by you. You will not use carrier account information (e.g., carrier account number, amount of shipping rates, etc.) for any purpose, nor disclose such information to any third party, and you will protect such information as Amazon's confidential information in accordance with Section 11 of the General Terms of this Agreement. As between you, us, and the applicable carrier, you will be the shipper of record, and we will make payment to the carrier with respect to the shipment of all Units using such discounted rates. Title and risk of loss for any Unit shipped using discounted rates provided by us under this Section will remain with you, and our provision of such shipping rates will not create any liability or responsibility for us with respect to any delay, damage, or loss incurred during shipment. You authorize the applicable carrier to provide us with all shipment tracking information.

**F-3.4** If you ship Units from outside the applicable Elected Country to fulfillment centers, you will list yourself as the importer/consignee and nominate a customs broker. If Amazon is listed on any import documentation, Amazon reserves the right to refuse to accept the Units covered by the import documents and any costs assessed against or incurred by Amazon will be collected from Your Bank Account, deducted from amounts payable to you, or by other method at our election.

## F-4 Storage

We will provide storage services as described in these FBA Service Terms once we confirm receipt of delivery. We will keep electronic records that track inventory of Units by identifying the number of Units stored in any fulfillment center. We will not be required to physically mark or segregate Units from other inventory units (e.g., products with the same Amazon standard identification number) owned by us, our Affiliates or third parties in the applicable fulfillment center(s). If we elect to commingle Units with such other inventory units, both parties agree that our records will be sufficient to identify which products are Units. We may move Units among facilities. If there is a loss of or damage to any Units while they are being stored, we will, compensate you in accordance with the FBA Guidelines, and you will, at our request, provide us a valid tax invoice for the compensation paid to you. If we compensate you for a Unit, we will be entitled to dispose of the Unit pursuant to <u>Section F-7</u>. At all other times, you will be solely responsible for any loss of, or damage to, any Units. Our confirmed receipt of delivery does not: (a) indicate or imply that any Unit has been delivered free of loss or damage, or that any loss or damage to any Unit later discovered occurred after confirmed receipt of delivery; (b) indicate or

imply that we actually received the number of Units of Your Product(s) specified by you for such shipment; or (c) waive, limit, or reduce any of our rights under this Agreement. We reserve the right to change scheduling restrictions and volume limitations on the delivery and storage of your inventory in fulfillment centers in accordance with Section 15 of the General Terms, and you will comply with any of these restrictions or limitations.

**F-5 Fulfillment**

As part of our fulfillment services, we will ship Units from our inventory of Your Products to the shipping addresses in the Elected Country included in valid customer orders, or submitted by you as part of a Fulfillment Request. We may ship Units together with products purchased from other merchants, including any of our Affiliates. We also may ship Units separately that are included in a single Fulfillment Request. If you participate in our export fulfillment services, we will also ship Your Products that we determine to be eligible (each, a **"Foreign-Eligible Product"**) to Foreign Addresses within countries we determine to be eligible for foreign shipments, subject to the additional terms on foreign shipments in the applicable FBA Guidelines.

**F-6 Customer Returns**

**F-6.1** You will be responsible for and will accept and process returns of, and provide refunds and adjustments for, any Multi-Channel Fulfillment Units in accordance with the Agreement (including the applicable Program Policies).

**F-6.2** We will receive and process returns of any Amazon Fulfillment Units that were shipped to addresses within the Elected Country in accordance with the terms of your Seller Agreement, these FBA Service Terms, and the Program Policies. Any Sellable Units that are also Amazon Fulfillment Units and that are properly returned will be placed back into the inventory of Your Products in the FBA Program. We may fulfill customer orders for Your Products with any returned Amazon Fulfillment Units. Except as provided in Section F-7, you will retake title of all Units that are returned by customers.

**F-6.3** Subject to Section F-7, we will, at your direction, either return or dispose of any Unit that is returned to us by a customer and that we determine is an Unsuitable Unit.

**F-6.4** If Amazon receives a customer return of a Multi-Channel Fulfillment Unit, you will direct us to return or dispose of the Unit at your own cost failing which we may dispose of the Unit as provided in Section F-7.

**F-7 Returns to You and Disposal**

**F-7.1** You may, at any time, request that Units be returned to you or that we dispose of Units.

**F-7.2** We may with notice return Units to you, including upon termination of these FBA Service Terms. Returned Units will be sent to your designated shipping address. However, if (a) the designated shipping address we have for you is outdated or incorrect, (b) you have not provided or, upon our request, confirmed a designated shipping address in the Elected Country, or (c) we cannot make arrangements for you to pay for the return shipment, then the Unit(s) will be deemed abandoned and we may elect to dispose of them as appropriate based on the inventory (e.g., by selling, donating, or recycling it) and retain any proceeds we may receive from the disposal.

We may dispose of any Unsuitable Unit (and you will be deemed to have consented to our action) (d) immediately if we determine that (i) the Unit creates a safety, health, or liability risk to Amazon, our personnel, or any third party; (ii) you have engaged in fraudulent or illegal activity; or (iii) we have cause to terminate your use of Services with immediate effect pursuant to Section 3 and are exposed to liability towards a third party; (e) if you fail to direct us to return or dispose of any Unsuitable Unit within thirty (30) days after we notify you that the Unit has been recalled; or (f) if you fail to indicate your removal preference for any Unsuitable Unit such disposal may be in any manner we deem appropriate (e.g., by selling, donating, or recycling,) and we may retain any proceeds received.

We will schedule removal of your Unsuitable Units, whether for return to you, liquidation or disposal on your behalf, at our earliest discretion (or as otherwise specified in the applicable Program Policies). In addition, you will reimburse us for expenses we incur in connection with any Unsuitable Units.

**F-7.3** You may, at any time, request that we dispose of Units. In this case, we may dispose of these Units as appropriate based on the inventory (e.g., by selling, recycling, donating, or destroying it) and retain any proceeds we may receive from the disposal. Title to each disposed Unit will transfer to us (or a third party we select such as a charity) at no cost, free and clear of any liens, claims, security interests or other encumbrances to the extent required to dispose of the Unit, and we may retain any proceeds, we may receive from the disposal.

**F-7.4** You will promptly notify us of any recalls or potential recalls, or safety alerts of any of Your Products and cooperate and assist us in connection with

any recalls or safety alerts, including by initiating the procedures for returning items to you under our standard processes. You will be responsible for all costs and expenses you, we or any of our or your Affiliates incur in connection with any recall or potential recall or safety alerts of any of Your Products (including the costs to return, store, repair, liquidate, or deliver to you or any vendor any of these products).

**F-8 Customer Service**

**F-8.1** For Multi-Channel Fulfillment Units we will have no customer service obligations other than to pass any inquiries to your attention at the contact you provide, and to make available a reasonable amount of information regarding the status of the fulfillment of Your Products if you request it and if and to the extent we possess the requested information. You will ensure that all of your policies and messaging to your customers regarding shipping of Your Products and other fulfillment-related matters, reflect our policies and requirements, including with regard to shipping methods, returns, and customer service; and, you will conspicuously display on your website(s), in emails or in other media or communications any specific disclosures, messaging, notices, and policies we require.

**F-8.2** We will be responsible for all customer service issues relating to packaging, handling and shipment, and customer returns, refunds, and adjustments related to Amazon Fulfillment Units. We will determine whether a customer will receive a refund, adjustment or replacement for any Amazon Fulfillment Unit and we will require you to reimburse us where we determine you have responsibility in accordance with the Agreement (including these FBA Service Terms and the Program Policies). We will promptly notify you when you are responsible for a customer refund. You may appeal if you disagree with our finding within thirty (30) days after our notification, in addition to your right to request that Units be returned to you under Section F-7.1. Except as provided in this Section F-8 regarding any Amazon Fulfillment Units, customer service will be handled in accordance with your Seller Agreement.

**F-8.3** In situations relating to Amazon Fulfillment Units where the wrong item was delivered or the item was damaged or lost or is missing, unless we determine that the basis for such request is caused by you or any of your employees, agents, or contractors, we will, at our option: (a) for any Amazon Fulfillment Unit, (i) ship a replacement Unit to the customer and reimburse you in accordance with the FBA Guidelines for the replacement Unit, or (ii) process a refund to the customer and reimburse you in accordance with the FBA Guidelines for the Unit; or (b) for any Multi-Channel Fulfillment Unit, reimburse you in accordance with the FBA Guidelines for the Unit (and you will, at our

request, provide us a valid tax invoice for the compensation paid to you). Any
customer refund will be processed in accordance with the Selling on Amazon
and the Transaction Processing Service Terms (if the Elected Country for a
Service is the United States). Notwithstanding the Selling on Amazon Service
Terms, we will be entitled to retain the applicable fees payable to us under the
Selling on Amazon Service Terms and these FBA Service Terms, respectively.
Except as expressly provided in this Section F-8.3, you will be responsible for all
costs associated with any replacement or return.

**F-8.4** If we provide a replacement Unit or refund as described in Section F-8.3 to
a customer and that customer returns the original Unit to us, we will be entitled
to dispose of the Unit pursuant to Section F-7, or, if it is a Sellable Unit, we may,
at our option, place such Unit back into your inventory in accordance with
Section F-6. If we do put a Unit back into your inventory, you will reimburse us
for the applicable Replacement Value (as described in the FBA Guidelines) of the
returned Unit. Any replacement Unit shipped by us under these FBA Service
Terms will be deemed to be, and will be treated in the same manner as, an
order and sale of such Unit from you to the customer via the applicable Amazon
Site or Service in accordance with, and subject to, the terms and conditions of
this Agreement and your Seller Agreement.

**F-9 Compensation for Fulfillment Services**

**F-9.1 Handling and Storage Fees.** You will pay us the applicable fees described
in the applicable Fulfillment by Amazon Fee Schedule. You will be charged the
Storage Fees beginning on the day (up to midnight) that the Unit arrives at a
fulfillment center and is available for fulfillment by Amazon (or in the case of
any Unsuitable Unit, the arrival day (up to midnight)), until the earlier of: (a) the
day (up to midnight) we receive a valid customer order for such product or a
request from you to return or dispose of the Unit; or (b) the day (up to
midnight) we actually ship the Unit to your designated return location or
dispose of the Unit.

**F-9.2 Shipping and Gift Wrap.** For any Amazon Fulfillment Units we will
determine the amounts charged to the customer for shipping and gift wrap
services for the Units that we fulfill through the FBA Program. As between you
and us, these charges will be your charges to the customer, and we will report
them to you. We will charge you (and you will pay us) a fee equal to the amount
of such charges to the customer. In the case of shipments of Units sold through
the Amazon Site that qualify for the "Free Shipping" promotion, the amounts
charged to the customer for shipping the Selling on Amazon Units that Amazon
fulfills will first be charged to the customer and will next be deducted from the
total charges to the customer as your promotion and Amazon will not charge

you the fee described above. If you ship Units to us using the shipping rates that
we may make available pursuant to Section F-3.3, you will reimburse us for the
actual amounts charged to us by the applicable carrier for such shipments.

**F-9.3 Proceeds.** We may as appropriate keep part of or all proceeds of any Units
that we are entitled to dispose of pursuant to F-7 above, or to which title
transfers, including returned, damaged, or abandoned Units. You will have no
security interest, lien, or other claim to the proceeds that we receive in
connection with the sale, fulfillment, and/or shipment of these Units.

**F-10 Indemnity**

In addition to your obligations under Section 6 of the General Terms of this
Agreement, you also agree to indemnify, defend, and hold harmless us, our
Affiliates, and our and their respective officers, directors, employees,
representatives, and agents against any Claim that arises from or relates to: (a)
the Units (whether or not title has transferred to us, and including any Unit that
we identify as yours pursuant to Section F-4), including any personal injury,
death, or property damage; (b) any of Your Taxes or the collection, payment, or
failure to collect or pay Your Taxes; and, if applicable (c) any sales, use, value
added, personal property, gross receipts, excise, franchise, business, or other
taxes or fees, or any customs, duties, or similar assessments (including penalties,
fines, or interest on any of the foregoing) imposed by any government or other
taxing authority in connection with the shipment of Foreign-Eligible Products to
Foreign Addresses (collectively, **"Foreign Shipment Taxes"**).

**F-11 Release**

You, on behalf of yourself and any successors, subsidiaries, Affiliates, officers,
directors, shareholders, employees, assigns, and any other person or entity
claiming by, through, under, or in concert with them (collectively, the
**"Releasing Parties"**), irrevocably acknowledge full and complete satisfaction of
and unconditionally and irrevocably release and forever fully discharge Amazon
and each of our Affiliates, and any and all of our and their predecessors,
successors, and Affiliates, past and present, as well as each of our and their
partners, officers, directors, shareholders, agents, employees, representatives,
attorneys, and assigns, past and present, and each of them and all Persons
acting by, through, under, or in concert with any of them (collectively, the
**"Released Parties"**), from any and all claims, obligations, demands, causes of
action, suits, damages, losses, debts, or rights of any kind or nature, whether
known or unknown, suspected or unsuspected, absolute or contingent, accrued
or unaccrued, determined or speculative (collectively, **"Losses"**) which the
Releasing Parties now own or hold or at any time have owned or held or in the

future may hold or own against the Released Parties, or any of them, arising out of, resulting from, or in any way related to the shipment, export, or delivery of Your Products to Foreign Addresses, including any tax registration or collection obligations. You, on behalf of yourself and all other Releasing Parties, recognize that you, and each of them, may have some Losses, whether in tort, product liability, contract, warranty, or otherwise, against the Released Parties of which you, or any of them, are totally unaware and unsuspecting, or which may arise or accrue after the date you register for or use FBA, which the Releasing Parties are giving up by agreeing to these FBA Service Terms. It is your intention in agreeing to these FBA Service Terms that these FBA Service Terms will deprive the Releasing Parties of each and all such Losses and prevent the Releasing Party from asserting any such Losses against the Released Parties, or any of them. In addition to the foregoing, you acknowledge, on behalf of yourself and all other Releasing Parties that you are familiar with Section 1542 of the Civil Code of the State of California, as follows:

**"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

You, on behalf of yourself and all other Releasing Parties, expressly waive and relinquish any rights that you had or may have under Section 1542 of the Civil Code of the State of California or any similar provision of the law of any other jurisdiction, to the full extent that you may lawfully waive all such rights pertaining to the subject matter of these FBA Service Terms.

**F-12 Disclaimer**

IN ADDITION TO THE DISCLAIMER IN SECTION 7 OF THE GENERAL TERMS OF THIS AGREEMENT, WE DISCLAIM ANY DUTIES OF A BAILEE OR WAREHOUSEMAN, AND YOU WAIVE ALL RIGHTS AND REMEDIES OF A BAILOR (WHETHER ARISING UNDER COMMON LAW OR STATUTE OR OTHERWISE), RELATED TO OR ARISING OUT OF ANY POSSESSION, STORAGE, OR SHIPMENT OF YOUR PRODUCTS BY US OR OUR AFFILIATES OR ANY OF OUR OR THEIR CONTRACTORS OR AGENTS.

**F-13 Effect of Termination**

Your termination rights are set forth in Section 3 of this Agreement. Following any termination of the Agreement or these FBA Service Terms in connection with a particular Elected Country, we will, as directed by you, return to you or dispose of the Units held in that Elected Country as provided in Section F-7. If

you fail to direct us to return or dispose of the Units within fourteen (14) days
(or as otherwise specified in the applicable Program Policies) after termination,
then we may elect to return and/or dispose of the Units in whole or in part, as
provided in Section F-7, and you agree to such actions. Upon any termination of
these FBA Service Terms in connection with a particular Elected Country, all
rights and obligations of the parties under these FBA Service Terms in
connection with such Elected Country will be extinguished, except that the
rights and obligations of the parties under Sections F-1, F-2, F-3, F-4, F-5, F-6,
F-7, F-8, F-9, F-11, F-12, and F-13 with respect to Units received or stored by
Amazon as of the date of termination will survive the termination.

**F-14 Tax Matters**

You understand and acknowledge that storing Units at fulfillment centers may
create tax nexus for you in any country, state, province, or other localities in
which your Units are stored, and you will be solely responsible for any taxes
owed as a result of such storage. If any Foreign Shipment Taxes or Your Taxes
are assessed against us as a result of performing services for you in connection
with the FBA Program or otherwise pursuant to these FBA Service Terms, you
will be responsible for such Foreign Shipment Taxes and Your Taxes and you will
indemnify and hold Amazon harmless from such Foreign Shipment Taxes and
Your Taxes as provided in Section F-10 of these FBA Service Terms.

**F-15 Additional Representation**

In addition to your representations and warranties in Section 5 of the General
Terms of this Agreement, you represent and warrant to us that: (a) you have
valid legal title to all Units and all necessary rights to distribute the Units and to
perform under these FBA Service Terms; (b) you will deliver all Units to us in
new condition (or in such condition otherwise described by you in the applicable
Your Product listing) and in a merchantable condition; (c) all Units and their
packaging will comply with all applicable marking, labeling, and other
requirements required by Law; (d) no Unit is or will be produced or
manufactured, in whole or in part, by child labor or by convict or forced labor;
(e) you and all of your subcontractors, agents, and suppliers involved in
producing or delivering Units will strictly adhere to all applicable Laws of the
Elected Country, its territories, and all other countries where Units are produced
or delivered, regarding the operation of their facilities and their business and
labor practices, including working conditions, wages, hours, and minimum ages
of workers; and (f) that all Foreign-Eligible Products (i) can be lawfully exported
from Canada, Mexico, or the United States, as applicable, without any license or
other authorization; and (ii) can be lawfully imported into, and comply with all
applicable Laws of, any eligible country.

**FBA Definitions**

**"Amazon Fulfillment Units"** means Units fulfilled using FBA that are sold through an Amazon Site. For avoidance of doubt, if you have successfully registered for or used both the FBA and Selling on Amazon Services, then the term "Amazon Fulfillment Units" and the defined term "Amazon Fulfilled Products" in the Selling on Amazon Service Terms both refer to the same items.

**"FBA Excluded Product"** means any Unit that is an Excluded Product or is otherwise prohibited by the applicable Program Policies.

**"Foreign Address"** means (a) if the Elected Country is the United States, any mailing address that is not (i) within the fifty states of the United States or Puerto Rico, or (ii) an APO/FPO address; and (b) if the Elected Country is not the United States, any mailing address that is not within the Elected Country.

**"Fulfillment Request"** means a request that you submit to us (in accordance with the standard methods for submission prescribed by us) to fulfill one or more Multi-Channel Fulfillment Units.

**"Multi-Channel Fulfillment Units"** has the meaning in Section F-2.

**"Sellable Unit"** means a Unit that is not an Unsuitable Unit.

**"Seller Agreement"** means the Selling on Amazon Service Terms, the Merchants@ Program Agreement, the Marketplace Participation Agreement, any successor to any of these agreements, or any other similar agreement (as determined by Amazon) between you and us that permits you to offer products and services via a particular Amazon Site.

**"Shipping Information"** means with respect to any purchased Unit(s), the following information: the name of the recipient, the shipping address, the quantity of Units to be shipped, and any other shipping-related information we may reasonably request.

**"Unit"** means a unit of Your Product that you deliver to Amazon in connection with the FBA Program.

**"Unsuitable Unit"** means a Unit: (a) that is defective, damaged, unfit for a particular purpose, or lacking required label(s); (b) the labels for which were not properly registered with Amazon before shipment or do not match the product that was registered; (c) that is an FBA Excluded Product or does not comply with

the Agreement (including applicable Service Terms and Program Policies); (d)
that Amazon determines is unsellable or unfulfillable; or (e) that Amazon
determines is otherwise unsuitable.

**Amazon Advertising Service Terms**

The Amazon Advertising Service Terms govern your use of Amazon Advertising,
a Service that allows you to advertise your products. The Amazon Advertising
Service Terms apply to your use of the Ad Services.

Your use of the Ad Services (as defined in the Amazon Advertising Agreement) is
governed by the Amazon Advertising Agreement. You accept the Amazon
Advertising Agreement, which may be updated from time to time by Amazon in
accordance with its terms. The Amazon Advertising Agreement is available at
https://advertising.amazon.com/terms. In the event of any conflict between the
General Terms or Program Policies and the Amazon Advertising Agreement with
respect to the Ad Services, the Amazon Advertising Agreement will prevail to
the extent of the conflict. If the Amazon Advertising Agreement is deemed
unlawful, void, or for any reason unenforceable, then the General Terms will
govern your access to and use of the Ad Services.

**Transaction Processing Service Terms**

BY REGISTERING FOR OR USING ANY SERVICE OTHER THAN AMAZON
ADVERTISING FOR WHICH THE ELECTED COUNTRY IS THE UNITED STATES,
YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE
TO BE BOUND BY THESE TRANSACTION PROCESSING SERVICE TERMS FOR
THAT SERVICE. **NOTWITHSTANDING THE FOREGOING, IF A SEPARATE
AGREEMENT GOVERNS THE OFFER, SALE OR FULFILLMENT OF YOUR
PRODUCTS ON THE US AMAZON SITE, THE TERMS OF THAT AGREEMENT
WILL CONTINUE TO GOVERN THE PROCESSING OF YOUR TRANSACTIONS TO
THE EXTENT DESCRIBED IN THAT AGREEMENT.**

**P-1 Payments Processing Agency Appointment**

For non-invoiced orders, you authorize Amazon Payments, Inc. to act as your
agent for purposes of processing payments, refunds and adjustments for Your
Transactions, receiving and holding Sales Proceeds on your behalf, remitting
Sales Proceeds to Your Bank Account, charging your Credit Card, and paying
Amazon and its Affiliates amounts you owe in accordance with this Agreement
or other agreements you may have with Amazon Affiliates. For invoiced orders,
you authorize: (a) Amazon Capital Services, Inc. to act as your agent for
purposes of processing payments, refunds and adjustments for Your

Transactions, and receiving and holding Sales Proceeds on your behalf; and (b) Amazon.com Services LLC to act as your agent for purposes of remitting Sales Proceeds to Your Bank Account, charging your Credit Card, and paying Amazon and its Affiliates amounts you owe in accordance with this Agreement or other agreements you may have with Amazon Affiliates. Amazon Payments, Inc., Amazon Capital Services, Inc., and Amazon.com Services LLC are each an **"Amazon Payments Agent"**. The applicable Amazon Payments Agents provide the services described in these Transaction Processing Service Terms and the related services described in Sections S-1.4, S-2.2, S-5, and F-8.3 of the Agreement (collectively, the **"Transaction Processing Services"**).

When a buyer instructs us to pay you, you agree that the buyer authorizes and orders us to commit the buyer's payment (less any applicable fees or other amounts we may collect under this Agreement) to you. You agree that buyers satisfy their obligations to you for Your Transactions when we receive the Sales Proceeds. We will remit funds to you in accordance with this Agreement.

**P-2 Remittance**

Subject to Section 2 of the General Terms of this Agreement, the applicable Amazon Payments Agents will remit funds to you in accordance with Section S-5 of the Agreement and these Transaction Processing Service Terms. Each applicable Amazon Payments Agent's obligation to remit funds collected or received by it or otherwise credited to your available balance in connection with Your Transactions is limited to funds in your available balance that have become available in accordance with this Agreement less amounts owed to Amazon and any taxes that Amazon automatically calculates, collects and remits to a tax authority according to applicable law, as specified in the Tax Policies, subject to chargeback or reversal or withheld for anticipated claims in accordance with this Agreement. Without limiting Amazon's rights to collect any amounts you owe, the applicable Amazon Payments Agent's receipt of Sales Proceeds or crediting of Sales Proceeds to your available balance discharges your obligation to pay applicable fees and other amounts under this Agreement to the extent the Sales Proceeds received or credited equal or exceed the fees and other amounts you owe and the Sales Proceeds are applied to the payment of those fees and amounts.

**P-3 Your Funds**

Your Sales Proceeds will be held in an account with the applicable Amazon Payments Agent (a **"Seller Account"**) and will represent an unsecured claim against that Amazon Payments Agent. Your Sales Proceeds are not insured by the Federal Deposit Insurance Corporation, nor do you have any right or

entitlement to collect Sales Proceeds directly from any customer. Prior to disbursing funds to you, an Amazon Payments Agent may combine Sales Proceeds held with the funds of other users of the Services, invest them, or use them for other purposes permitted by applicable Laws. You will not receive interest or any other earnings on any Sale Proceeds. To the extent required by applicable Laws, an Amazon Payments Agent will not use any funds held on your behalf for its corporate purposes, will not voluntarily make such funds available to its creditors in the event of bankruptcy or for any other purpose, and will not knowingly permit its creditors to attach such funds.

### P-4 Verification

We may at any time require you to provide any financial, business or personal information we request to verify your identity. Providing accurate identity verification, upon request, is a condition precedent to further disbursements following account suspension or termination. You authorize us to obtain from time to time consumer credit reports to establish or update your Seller Account or in the event of a dispute relating to this Agreement or the activity under your Seller Account. You agree to update all Seller Account information promptly upon any change. The Amazon Payments Privacy Notice applies to transactions processed by Amazon Payments, Inc. This provision survives termination of the Agreement.

### P-5 Dormant Accounts

If there is no activity (as determined by us) in connection with your Seller Account for the period of time set forth in applicable unclaimed property laws and we hold Sales Proceeds on your behalf, we will notify you by means designated by us and provide you the option of keeping your Seller Account open and maintaining the Sales Proceeds in your Seller Account. If you do not respond to our notice(s) within the time period we specify, we will send the Sales Proceeds in your Seller Account to your state of residency, as determined by us based on the information in your Seller Account. If we are unable to determine your state of residency or your Seller Account is associated with a foreign country, your funds may be sent to the State of Delaware.

### Selling Partner API Terms

### API-1 Description of the Selling Partner APIs

The "Selling Partner APIs" enable your systems to interface with certain features or functionality we make available to you. These Selling Partner API Terms concern and apply only to your use of the Selling Partner APIs unless specifically

provided otherwise. Under the Selling Partner API Terms, you may authorize parties who (a) develop Applications to support you using the Selling Partner APIs or the API Materials, (b) have registered with us as Developers, and (c) who have agreed to the Marketplace Developer Agreement ("Developers") to access Confidential Information and Your Materials via the Selling Partner APIs provided, in each case, that where Confidential Information is disclosed to Developers, you shall remain liable for the acts or omissions of such Developers as if such acts or omissions were your own. If you wish to use the Selling Partner APIs directly or develop software or a website that interfaces with the Selling Partner APIs or the API Materials (an "Application"), you must register as a Developer.

We may make available Selling Partner APIs (including the Marketplace Web Services APIs) and software, data, text, audio, video, images, or other content we make available in connection with the Selling Partner APIs, including related documentation, software libraries, and other supporting materials, regardless of format (collectively the "API Materials") that permit your systems to interface with certain features or functionality available to you. You may authorize Developers to access Confidential Information and Your Materials via the Selling Partner APIs solely for the purpose of supporting your business on Amazon and provided, in each case, that where Confidential Information is disclosed to Developers, you shall remain liable for the acts or omissions of such Developers as if such act or omissions were your own. All terms and conditions applicable to the Selling Partner APIs and the API Materials in this Agreement are solely between you and us. API Materials that are public or open source software ("Public Software") may be provided to you under a separate license, in which case, notwithstanding any other provision of this Agreement, that license will govern your use of those API Materials. For the avoidance of doubt, except to the extent expressly prohibited by the license governing any API Materials that are Public Software, all of the non-license provisions of this Agreement will apply.

**API-2 License and Related Requirements**

**API-2.1 Generally.**

We grant you a limited, revocable, non-exclusive, non-sublicenseable, nontransferable license during the term of the Agreement to allow Developers to access and use Confidential Information and Your Materials through the Selling Partner APIs and the API Materials solely in support of your use of the Services covered by this Agreement. As between you and us, we or our licensors own all right, title, and interest in and to the  Confidential Information, the Selling Partner APIs, the API Materials, any technical and operational

specifications, security protocols and other documentation or policies provided
or made available by us with respect to the Selling Partner APIs or the API
Materials (the "Selling Partner API Specifications"), and our internal data center
facilities, servers, networking equipment, and host software systems that are
within our or their reasonable control and are used to provide the Selling
Partner APIs or the API Materials (the "Amazon Network").

**API-2.2 License Restrictions.**

You may authorize Developers to access Confidential Information and Your
Materials through the Selling Partner APIs and the API Materials only through
APIs documented and communicated by us in accordance with any applicable
Selling Partner API Specifications. You may not authorize any other party to do
any of the following with the Confidential Information, the Selling Partner APIs
and the API Materials: (a) reverse engineer, decompile, or disassemble them; (b)
modify or create derivative works based upon them in whole or in part; (c)
distribute copies of them; (d) remove any proprietary notices or labels on them;
(e) use any Public Software in any manner that requires, pursuant to the license
applicable to such Public Software, that the Confidential Information, the
Selling Partner APIs and the API Materials be disclosed, licensed, distributed, or
otherwise made available to anyone; (f) resell, lease, rent, transfer, sublicense,
or otherwise transfer rights to them; (g) access or use them in a way intended to
avoid incurring any applicable fees or exceeding usage limits or quotas; (h)
access or use them for any purpose unrelated to your use of Services; or (i)
access or use them for fraudulent or illegal activities or activities that violate
our policies or are otherwise harmful to us or any third parties. The limitations
regarding Data Use in Section 11 above apply to any information you disclose or
receive by the direct or indirect use of the Selling Partner APIs.

**API-2.3 No License for Direct Access.**

For the avoidance of doubt, these Selling Partner API Terms do not provide you
a license to directly access or use the Selling Partner APIs, or install, copy, use,
or distribute API Materials. Direct use of the Selling Partner APIs may only be
licensed to Developers.

**API-2.4 Account Identifiers and Credentials.**

You must use the account IDs and any unique public key/private key pair issued
by us to provide access to your data via the Selling Partner APIs ("Account
Identifiers and Credentials") in accordance with these Selling Partner API Terms
to authorize Developers to access the Selling Partner APIs on your behalf. You
may only authorize access to Confidential Information and Your Materials via

the Selling Partner APIs in the way that we prescribe. Your Account Identifiers and Credentials are for your personal use only and you must maintain their secrecy and security. You are solely responsible for all activities that occur using your Account Identifiers and Credentials, regardless of whether the activities are undertaken by you or a third party (including your employees, contractors, or agents). You will provide us with notice immediately if you believe an unauthorized third party may be using your Account Identifiers and Credentials or if your Account Identifiers and Credentials are lost or stolen. We are not responsible for unauthorized use of your Account Identifiers and Credentials.

**API-2.5 Security of Your Materials and Confidential Information.**

You are solely responsible for authorizing others to access the Selling Partner APIs on your behalf and taking your own steps to maintain appropriate security, protection, and backup of the Confidential Information and Your Materials processed pursuant to your access to the Selling Partner APIs and the API Materials, including any Confidential Information you have disclosed to Developers in accordance with this Agreement. We are not responsible for any unauthorized access to, alteration of, or deletion, destruction, damage, loss, or failure to store any of the Confidential Information or Your Materials in connection with the Selling Partner APIs (including as a result of your or any third party's errors, acts, or omissions). If you believe (acting reasonably) that a personal data breach has occurred in relation to any customer personal data in your possession or otherwise under your control (including in the possession of a Developer), you shall immediately notify Amazon of such personal data breach (in sufficient detail) for information purposes, and promptly take any actions (or require a Developer take such actions, if relevant) as applicable to you under data privacy Laws.

**API-3 Termination**

**API-3.1 Termination of Your Access to the Selling Partner APIs and the API Materials.**

Without limiting the parties' rights and obligations under this Agreement, the Amazon Marketplace Developer Agreement, or the Amazon Marketplace API License Agreement, we may limit, suspend, or terminate your access to the Selling Partner APIs and the API Materials for convenience with 30 days' notice. We may terminate immediately if (a) we determine that you have materially breached this Agreement and failed to cure within 7 days of a cure notice; (b) you or your account have been engaged in deceptive, fraudulent, or illegal activity; or (c) your use of the Selling Partner APIs and the API Materials may harm our customers.

Upon any suspension or termination of your access to the Selling Partner APIs
and the API Materials, you will immediately cease authorizing others to use the
Selling Partner APIs and the API Materials. Upon any termination of your access
to the Selling Partner APIs and the API Materials, you will also immediately
destroy all API Materials. Upon any suspension or termination of your access to
the Selling Partner APIs and the API Materials, we may cause your Account
Identifiers and Credentials to cease to be recognized by the Amazon Network
for the purposes of the Selling Partner APIs and the API Materials.

**API-4 Modifications to the Selling Partner APIs and the API Materials**

We may change or discontinue the Selling Partner APIs or the API Materials
(including by changing or removing features or functionality of the Selling
Partner APIs or the API Materials) from time to time. For any material changes
that will negatively affect your business, we will provide notice under Section
18.

**API-5 Disclaimers**

THE SELLING PARTNER APIS AND THE API MATERIALS ARE PROVIDED "AS IS".
WE AND OUR AFFILIATE COMPANIES AND LICENSORS MAKE NO
REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS,
IMPLIED, STATUTORY OR OTHERWISE REGARDING THE SELLING PARTNER APIS
OR THE API MATERIALS, INCLUDING ANY WARRANTY THAT THE SELLING
PARTNER APIS OR THE API MATERIALS WILL BE UNINTERRUPTED, ERROR FREE,
OR FREE OF HARMFUL COMPONENTS, OR THAT ANY MATERIALS OR DATA YOU
ACCESS, USE, STORE, RETRIEVE, OR TRANSMIT IN CONNECTION WITH THE
SELLING PARTNER APIS, INCLUDING YOUR MATERIALS, WILL BE SECURE OR
NOT OTHERWISE LOST OR DAMAGED. EXCEPT TO THE EXTENT PROHIBITED BY
LAW, WE AND OUR AFFILIATE COMPANIES AND LICENSORS DISCLAIM ALL
WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY,
SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, NON-
INFRINGEMENT, OR QUIET ENJOYMENT, AND ANY WARRANTIES ARISING OUT
OF ANY COURSE OF DEALING OR USAGE OF TRADE. FURTHER, NEITHER WE
NOR ANY OF OUR AFFILIATE COMPANIES OR LICENSORS WILL BE
RESPONSIBLE FOR ANY COMPENSATION, REIMBURSEMENT, OR DAMAGES
ARISING IN CONNECTION WITH: (A) THE INABILITY TO USE THE SELLING
PARTNER APIS OR THE API MATERIALS FOR ANY REASON; (B) THE COST OF
PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES; OR (C) ANY
INVESTMENTS, EXPENDITURES, OR COMMITMENTS BY YOU IN CONNECTION
WITH THIS AGREEMENT OR YOUR USE OF OR ACCESS TO THE SELLING
PARTNER APIS OR THE API MATERIALS.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **Debtor's Motion for an Order Authorizing Debtor to Satisfy Pre-Petition Claims of Critical Vendor Amazon.Com Services, LLC Necessary for Debtor's Continued Business Operations; Declaration of Anthony Alcazar in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/1/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Proposed Counsel: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Katherine Bunker    kate.bunker@usdoj.gov
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/1/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Victoria Kaufman
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367 United States Bankruptcy Court

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/1/2024 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3. Served by Email:

U.S. Trustee:
Katherine Bunker
kate.bunker@usdoj.gov

SECURED CREDITORS:

8FIG Advance
Attn: Legal Dept.
legal@8fig.com

Amazon Capital Services:
Attn: Lauren Dorsett & Michael Gearin
laurendorsett@dwt.com
mike.gearin@klgates.com

Blue Bridge Financial
Attn: Amy Joy
ajoy@bluebridgefinancial.com
Legal@bluebridgefinancial.com

Bluevine
Attn: Officer
Support@bluevine.com

Cedar Advance
Attn: Simon Cedar
simon@cedaradvance.com

Corporation Service Company
SPRFiling@cscglobal.com; UCCSPREP@cscglobal.com

CT Corporation
uccfilingreturn@wolterskluwer.com

Fasanara Securitisation S.A. Acting
info@northdata.com

Financial Pacific Leasing
Attn: Allison Sweet
ASweet@FinPac.com

First Corporate Resolution
SPRS@FICOSO.COM

Huntington Valley Bank
Attn: Erin

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

erin@braavobank.com
Mercury Capital
info@mcadv.com

Metropolitan Capital Bank & Trust
Attn: Jeffrey Brown
rrabin@thompsoncoburn.com ; jbrown@thompsoncoburn.com

Parkside Funding Group LLC
Attn: Adriana Harris
Adriana@nomasrecovery.com

Partners Personnel Management Services, LLC
Attn: Cherly Canty
CCanty@espererholdings.com

Robert Reiser and Company
uccfilingreturn@wolterskluwer.com

Sand Park Capital
Attn: Simon Cedar
simon@cedaradvance.com

Sellers Funding
Attn: Officer
osaro@sellersfi.com; legal@sellersFi.com

Shopify Capital
Legal@bluebridgefinancial.com

Slope Advance
Attn: Ashish Jain
ashish@slope.com

Spartan Capital
Attn: Jason Gang
jason@jasongang.com

Stor RB One Limited
uccfilingreturn@wolterskluwer.com

U.S. Business Administration
Attn: Elan Levey
elan.levey@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

## 20 LARGEST UNSECURED CREDITORS

Easy Post
Attn: Dustin Henrie
dhenrie@easypost.com

Facebook
Attn: Anthony Miller
Anthony.Miller@radiusgs.com

Fleetcor Technologies Inc.
Attn: Officer
PartnerServices@FleetCor.com; jowilliams@willamsandwilliams.com

Greenberg Traurig
Attn: Reid Hockaday
hockadayr@gtlaw.com

IRS
Attn: Officer
Irs.gov.website.helpdesk@speedymail.com; robert.l.textor@irs.gov

Lyneer Staffying
Attn: Billing Dept.
billing@lyneer.com

Parker Group Inc.
Attn: Larry Nessenson, Esq.
lnessenson@jaffeandasher.com

Ramp
Attn: Officer
communications@ramp.com; support@ramp.com

Jeeves
alexg@tryjeeves.com; lucio@tryjeeves.com

Southern California Edison
Anthony Tarantino
Anthony.Tarantino@sce.com

UPS
Attn: Mary Kay
MaryKay.Pallas@iqor.com

We Pack it All
jesse.fonseca@wepackitall.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

Rapid Fulfillment LLC
Attn: Adam Brumage
ABrumage@collectmoore.com

Frisbi
billing@frisbi.com

Taboola
Attn: Fred Sampliner
fsampliner@sampliner.com  nminassian@hatkofflaw.com

MNTN
legal@mountain.com

Perpetua
billing@perpetua.io

Uline
accounts.receivable@uline.com

Bakers Authority
yoni@bakersauthority.com

Attentive Mobile
GMCCREADIE@nixonpeabody.com

SoCal Gas
customerservice@socalgas.com

Republic Services
ccet@republicservices.com

ADDITIONAL CREDITORS:

ArcBest, Inc.
dlott@arch.com

Old Dominion Freight Line, Inc.
Attn: Rusty Frazier
Rusty.frazier@odfl.com

TikTok Inc.
Attn: Emely Andino
usbilling@bytedance.com

Pawnee Leasing Corp.
Bankruptcy@pawneeleasing.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                    **F 9013-3.1.PROOF.SERVICE**

Taboola
Attn: Fred Sampliner
{fsampliner@sampliner.com"} nminassian@hatkofflaw.com

MNTN
legal@mountain.com

Perpetua
billing@perpetua.io

Uline
accounts.receivable@uline.com

Bakers Authority
yoni@bakersauthority.com

Attentive Mobile
GMCCREADIE@nixonpeabody.com

SoCal Gas
customerservice@socalgas.com

Republic Services
ccet@republicservices.com

ADDITIONAL CREDITORS:

ArcBest, Inc.
dlott@arch.com

Old Dominion Freight Line, Inc.
Attn: Rusty Frazier
Rusty.frazier@odfl.com

TikTok Inc.
Attn: Emely Andino
usbilling@bytedance.com

Pawnee Leasing Corp.
Bankruptcy@pawneeleasing.com

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                                                 **F 9075-1.1.APP.SHORT.NOTICE**